UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| JUSTIN BENTLEY, individually and On behalf of other similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>REDLINE CAPITAL, INC.,<br><br>    Defendant. | Case No.: 4:25 cv 319-KGB<br><br>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS |

**DEFENDANT REDLINE CAPITAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Defendant, Redline Capital, Inc., by and through its attorney Thomas P. Yardley, of, Buchalter, a Professional Corporation, pursuant to Federal Rule of Civil Procedure 12(f)(2), hereby submits this Memorandum in support of its Motion to Strike Plaintiff's Class Allegations, stating as follows:

**I.  FACTUAL BACKGROUND**

    **A.  Plaintiff's Complaint**

On April 2, 2025, Plaintiff filed his Complaint in the Central Division of the Eastern District of Arkansas against Redline Capital, Inc. (hereafter "Redline"), alleging violations of the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227) ("TCPA") arising from alleged calls made to Justin Bentley ("Plaintiff"). (See copy of Complaint attached hereto as Exhibit 1). Paragraph 32 of the Complaint proposes a class of persons defined as:

> Robocall Class: All Persons within the United States whom: (a) Defendant and/or Third Party acting on their behalf, made one or more non-emergency calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

1

(See ¶33 of Plaintiff's Complaint, Ex. 1).

Plaintiff's Complaint alleges a cause of action for violation of the TCPA. (See ¶¶44-48 of Plaintiff's Complaint, Ex. 1). Plaintiff alleges he received automated calls on January 24, 2025 and February 19, 2025. (See ¶¶21-24 of Plaintiff's Complaint, Ex. 1). Plaintiff further alleges "Defendant violated the TCPA by (a) using pre-recorded message to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf." (See ¶46 of Plaintiff's Complaint, Ex. 1). Plaintiff also affirmatively alleges that he has never provided written consent to receive calls from Defendant or any of its vendors. (See ¶31 of Plaintiff's Complaint, Ex. 1).

**B.      Defendant's Purchase of Pre-Approved Phone Numbers to Call**

Nicole Cruz ("Ms. Cruz") is the Chief Executive Officer of Defendant Redline, a New Jersey corporation. (See ¶3 of Declaration of Nicole Cruz attached hereto as Exhibit 2). In July 2024, Redline was exploring new avenues of customer engagement for brokering business loans and other possible business solutions. (¶5 of Cruz Declaration, Ex. 2). Ms. Cruz contacted her sales representative at Klover Data, LLC (hereafter "Klover") to inquire about purchasing a list of pre-approved and TCPA-compliant business leads. (¶¶5-7 of Cruz Declaration, Ex. 2). Ms. Cruz and Klover had previously done business together, and she was familiar with their services. (¶5 of Cruz Declaration, Ex. 2). Klover assured Redline the information was obtained via authorized consent from each user, and that each list was TCPA compliant. (¶¶7-8 of Cruz Declaration, Ex. 2). Pursuant to those assurances, Redline purchased a list of leads from Klover. (¶¶10-11 of Cruz Declaration, Ex. 2). Employees of Redline contacted only the names that we were provided by Klover, and did not deviate from the list of leads which were provided by Clover. (¶12 of Cruz Declaration, Ex. 2). At no time did representatives of Klover inform Redline that the list had

expired or that any names on the list had not given proper consent. (¶7 of Cruz Declaration, Ex. 2).

      **C.**      **Counsels' Misrepresentations in the Complaint and to Redline**

Plaintiff's Complaint alleges on February 19, 2025, Mr. Bentley received a call and was prompted to call back. (See ¶26 of Plaintiff's Complaint, Ex. 1). Plaintiff then alleges "a call to that number did identify Freddy Loperena," and "Mr. Loperena indicated he worked for the Defendant." (See ¶¶27-28 of Plaintiff's Complaint, Ex. 1). These allegations, however, are not only misleading but are an attempt to misrepresent the actions of Plaintiff and his counsel.

On February 19, 2025, Redline received a call from Jason Ryburn, counsel for Plaintiff. (See ¶15 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B [transcript of Ryburn call]). When Mr. Ryburn called, he spoke to a representative named Freddy Loperena and Mr. Ryburn himself claimed he was seeking a $100,000 loan for "investments and properties". (See ¶15 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B). Mr. Ryburn's call to Redline was recorded. (See Cruz Declaration Exhibit B). Using the misrepresentation that he was seeking a loan for real estate, Mr. Ryburn provided Redline with an email, emailryburn@gmail.com, to send him information on how to acquire the $100,000 loan. (See ¶16 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B).

Then on March 3, 2025, Plaintiff (or more likely his counsel of record in this case) emailed Redline, stating "however, calling 770-796-4388 did work and was answered by Freddy Loperena". (See ¶19 Cruz Declaration, Ex. 2). Notably, in the letter attached to Plaintiff's March 3, 2025 email, Plaintiff states, "I do not *believe* I have ever provided consent for your company to call or text my cell phone…*"* (See Ex. A to Cruz Declaration, Ex. 2) (emphasis added). The next day, on March 4, 2025, Plaintiff again emailed Redline stating he "had someone else call the

number left in the voicemail – that is why the email is to Jason", directly admitting that Plaintiff's counsel of record in this case, Mr. Ryburn, was the party to contact Redline, not Plaintiff.

These facts suggest that Mr. Ryburn was not in fact inquiring about real estate funding, but rather was attempting to get information from Redline without disclosing that he was an attorney or that the actual purpose for contacting Redline was the investigation of an alleged TCPA case. Plaintiff's counsel's calls to Redline and his intentional misrepresentations directly to Redline make him unfit to serve as counsel for all proposed class action Plaintiffs in this case. (See Cruz Declaration Exhibit C, Pgs 1-2). (See also ¶¶17-18 Cruz Declaration, Ex. 2).

## II. LAW AND ARGUMENT

The Eighth Circuit permits class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading, such that permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained. *Donelson v. Ameriprise Fin. Services, Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021).

Rule 23 of the Federal Rules of Civil Procedure provides that "at an early practicable time after a person sues or is sued as class representative, the court must determine by order whether to certify the class as a class action." F. R. Civ. P. 45(c)(1)(A). The Federal Rules of Civil Procedure further provide that an order to certify a class "must define the class and the class claims, issues, or defenses, and must appoint a class counsel". F. R. Civ. P. 45(c)(1)(B). Rule 23(a) further sets forth four perquisites for class certification, commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *General Telephone Co. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

A court may certify a class action if all of the Rule 23(a) procedural requirements are met and if at least one of the subsections of Rule 23(b) is satisfied. *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1539 (8th Cir.1996). The party seeking certification bears the burden of proof. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). District courts possess broad discretion in this matter, but must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 have been met, "including an 'examination of what the parties would be required to prove at trial.'" *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011).

To determine whether the requirements of Rule 23(a) have been satisfied, the district court must examine the factual basis for the plaintiff's claims and may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery. *Sanft v. Winnebago Industries, Inc.,* 214 F.R.D. 514, 519 (N.D. Iowa 2003), amended in part, 216 F.R.D. 453 (N.D. Iowa 2003).

### A.     Plaintiff's Class Definition is Overbroad.

Plaintiff's Complaint broadly attempts to define any person within the United States as being a "class member". (See ¶33 of Plaintiff's Complaint, Ex. 1). Without citation to fact, record or evidence, Plaintiff then goes on to suggest "potential members of the class number in the hundreds." (See ¶36 of Plaintiff's Complaint, Ex. 1). Paragraph 32 of the Complaint goes on to propose the class as:

> Robocall Class: All Persons within the United States whom: (a) Defendant and/or Third Party acting on their behalf, made one or more non-emergency calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(See ¶33 of Plaintiff's Complaint, Ex. 1).

Plaintiff fails to exclude from the class any person that consented to be contacted. *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 539 (D. Minn. 2017) ("a plaintiff alleging he received an autodialed call on his cell phone in violation of the TCPA must show the call was placed without his consent"); Here, Plaintiff's broad attempt to include every American citizen contacted by Defendant, without excluding those whom had consented, is improper, especially given Defendant's Declaration which raises significant questions relating to both Plaintiff and the putative class members issues with consent.

Indeed, the 8th Circuit has already found that when examining a class definition, "the Court must avoid defining the class as a "fail-safe" class so that only individuals who have valid claims are class members. *Mayo v. USB Real Est. Securities, Inc.,* No. 08-00568-CV-W-DGK, 2012 WL 4361571, at *3 (W.D. Mo. Sept. 21, 2012). In *Mayo*, the Court examined a challenge to a class definition which included "[a]ll persons who obtained a Second Mortgage Loan secured by Residential Real Estate located in Missouri that was purchased by and/or assigned to Defendant UBS Real Estate Securities, Inc. and made one or more payments of principal or interest on or after June 20, 2002' *Mayo*, No. 2012 WL 4361571, at *3. Finding even that definition to broad, the Court noted the definition made no mention of the issues it created, like fees, payments, or types of loans at issue. *Id*. As a result, the Court held the class was fatally flawed, as it "includes a large number of individuals who lack standing to bring claims." *Id*.

This finding is consistent with other Circuits, who have similarly held that broad class definitions in TCPA actions must be denied. For example, the 6th Circuit in *Barrett v. ADT Corp.*, found the plaintiff's proposed TCPA class was overbroad because "it [did] not limit the class to consumers who did not give prior consent to be contacted by [defendant]." 2016 WL 865672, at *9. The Court noted that "individual fact-finding [was] required to ascertain the members of the

6

proposed class." *Id.* Similarly, the 4th Circuit has held the issue of consent renders class certification impossible for TCPA actions because "there was no generalized, classwide basis to establish whether individual class members had consented". *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017). In so ruling, the 4th Circuit relied on a ruling from the 5th Circuit, where the Court held "the determinative question of whether consent can be established via class-wide proof must….be answered in the negative" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008).

Similarly here, Plaintiff attempts to include every single person in the United States that has been contacted by Redline in the last four years as a class member with no attempt whatsoever to distinguish between those who have consented or not, those who may have consented but withdrew that consent, the number of calls received, whether they heard/listened to the calls, if these person, named as class members, actually received calls, voicemails or both - or any of the other myriad of issues which can arise under a TCPA action. Moreover, Plaintiff here was in fact included on a list of individuals that had consented to be contacted. (¶ 12 Cruz Declaration, Ex. 2). Just as in *Mayo*, and the cases cited *supra,* Plaintiff's proposed definition of a class is inherently defective and must be rejected. *Mayo*, No. 2012 WL 4361571, at *3.

     **B.**     **Plaintiff Fails to Meet the Commonality Requirement**.

Having named such an overbroad class, Plaintiff's class allegations then proceed to fail the largest assessment of a TCPA action, the commonality requirement. Indeed, the 8th Circuit has examined precisely this issue, and found the broad sweep of claimants inherently defeats the commonality assessment under Rule 23.

The element of commonality is "the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.' " *Wal-Mart v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541,

180 L.Ed.2d 374 (2011). However, "what matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation…Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Keister v. Allstate Fire and Cas. Ins. Co.*, 663 F. Supp. 3d 1030, 1035 (W.D. Mo. 2023).

As it pertains to TCPA actions, 8th Circuit district courts have expressly discussed the issues that arise when there is a question as to consent. *Ung v. Universal Acceptance Corp.,* 319 F.R.D. 537, 539 (D. Minn. 2017). In *Ung*, the Court denied class certification where Ung attempted to define his class as:

> "All persons in the United States to whose cellular telephone number [Universal] placed a non-emergency telephone call using the same software and/or equipment it used to call Plaintiff between July 1, 2012, and February 9, 2015, where the person was identified as a landlord or other reference in UAC's system."

*Id*. at 538. Rejecting Ung's attempt to include every person in the country as a class member, the Court, borrowing and citing language from the United States Supreme Court, noted the issues created by the question of consent to call millions of phones across the nation "are nearly endless". *Id*. at 541. The Court in *Ung* held "the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof." *Id*. at 543. As such, district courts in the 8th Circuit have concretely held that "the issue of consent is unique to each individual of the class." *Id*. at 540.

Here, Plaintiff was included on a list of individuals that had consented to being contacted. (¶12 Cruz Declaration, Ex. 2). Furthermore, the details of this particular Plaintiff's consent are further muddied by the misrepresentations of Plaintiff's counsel, made directly to Redline, after Plaintiff allegedly received a phone call. (See ¶¶26-29 of Plaintiff's Complaint, Ex. 1; ¶15 Cruz Declaration, Ex. 2); Exhibits B and C to Cruz Declaration, Ex. 2). Indeed, Ethical Rule 4.1 states

8

"In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."). Plaintiff's counsel's misrepresentations to Redline confirmed via email are clearly quite different, and deserve a closer examination if Plaintiff wishes to assert his facts on behalf of every citizen in the United States. There are questions as to consent and furthermore potential ethical and legal issues surrounding how Redline was contacted by following the alleged calls in this matter. As such, Plaintiff is entirely unique to the country-wide class of litigants he attempts to define as his class. As such, questions of fact exist solely for Plaintiff that would not be present for other litigants. *See Wal-Mart v. Dukes*, 564 U.S. 349, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Because Plaintiff has unique issues of law and fact exclusive to him, the Court must strike Plaintiff's class definition and allegations for lack of commonality.

        **C.**      **Plaintiff Fails to Meet the Numerosity Requirement.**

While Plaintiff attempts to use the broadest language possible to define and create his class, his efforts still result in the failure of the numerosity requirement under 8th Circuit and federal law. The first requirement of Rule 23(a) is that a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To meet this requirement, the court must conclude that a class is sufficiently large so as to render joinder of all its members impracticable <u>in light of the particular circumstances of the case</u>. *Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist.*, 446 F.2d 763, 765 (8th Cir.1971). [Emphasis Added]. The 8th Circuit has further held "[i]n addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members.

*Sanft v. Winnebago Industries, Inc.,* 214 F.R.D. 514, 521 (N.D. Iowa 2003), amended in part, 216 F.R.D. 453 (N.D. Iowa 2003), citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559–60 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

In the instant matter, Mr. Bentley presents a number of unique issues that would separate him from the rest of his proposed class. Plaintiff acknowledges the ethically and legally questionable way in which he formed his Complaint. (See Cruz Declaration Exhibit C, Pgs 1-2); (See ¶¶26-29 of Plaintiff's Complaint, Ex. 1); (See ¶15 Cruz Declaration, Ex. 2). Plaintiff's emails with Redline admit as much, directly stating he "had someone else call the number left in the voicemail – that is why the email is to Jason". (See ¶20 Cruz Declaration, Ex. 2); (See also Cruz Declaration Exhibit C). Additionally, Plaintiff's own letter to Redline leaves open the admission he consented, stating directly "I do not believe I have ever provided consent for your company to call or text my cell phone". (See Cruz Declaration Exhibit B). [Emphasis Added]. Plaintiff thus admits there are open questions of consent related to his presence on the list which was purchased by Redline. This pattern of fact and law would be entirely unique to him, his counsel and this matter, rendering his ability to be counted with countless other potential plaintiffs impossible.

Because Plaintiff Justin Bentley presents unique issues to his matter alone, he cannot meet the requirements of Rule 23(a), and his class allegations must be dismissed.

### D. Plaintiff Fails to Meet the Typicality Requirement.

Typicality requires that the claims of the representative parties be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). As such, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 156 (1982). The typicality and adequacy criteria serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's

claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *Grainger v. Precision of New Hampton, Inc.,* 343 F.R.D. 416, 425 (N.D. Iowa 2023), *reconsideration denied*, No. C22-2043-LTS-KEM, 2023 WL 8411290 (N.D. Iowa Apr. 24, 2023). A class representative is "not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437 (8th Cir.1999).

As noted above, Plaintiff presents a number of unique issues to him which would not be shared with the class. At once, Mr. Bentley has placed his consent at-issue by at once telling Reline "<u>I do not believe</u> I have ever provided consent" (See Cruz Declaration Exhibit C), while then alleging in his Complaint affirmatively he did not. (See ¶31 of Plaintiff's Complaint, Ex. 1). This creates a distinct issue of consent separate from even what other class members might allege as the basis for their potential claim. Indeed, district courts in the 8th Circuit have found "the circumstances surrounding consent are not 'susceptible to generalized, class-wide proof.'" *Ung v. Universal Acceptance Corp.,* 319 F.R.D. 537, 541 (D. Minn. 2017), *citing Blades v. Monsanto Co.,* 400 F.3d 562, 572 (8th Cir. 2005) ("class certification requires 'proof common to the class'"). Thus, issues of consent, amount of calls, interaction with the caller (if any), each present possibly different violations or damages under the TCPA, for which district courts in the 8th circuit have already found "there can be no doubt here that class members would be entitled to individual monetary awards based on the number of (allegedly) unlawful calls they received. *Id*. at 544. The circumstances of Mr. Bentley's case thus present a unique analysis to the Court, even before one considers the ethical and legal issues in their Complaint.

The issues Mr. Bentley presents numerous ethical and legal questions with the discrepancies in his Complaint that would not be typical to any other class member. Despite

suggesting in his Complaint that it he, Justin Bentley, called back Redline after allegedly receiving a call, the record reveals it was in fact his attorney. (See ¶¶26-29 of Plaintiff's Complaint, Ex. 1); (See ¶15 Cruz Declaration, Ex. 2); (See also Cruz Declaration Exhibit B, C). These statements likely run afoul of Rule 4.1, 8.3 and 8.4, and place his attorney in the position of himself being a witness in this matter. Further, there is no question he was being misleading towards a potential client. This alone will require discovery on just this issue, and puts Mr. Bentley's case well apart from any other possible class member.

Because Plaintiff would require a unique and specific defense to the allegations he has alleged, as well as his and his counsel's demonstrated conduct leading up to the filing of this action, this Court must find that Plaintiff has failed the typicality requirement of Rule 23(a)(3).

### E.  Plaintiff's Counsel Cannot Adequately Represent the Interests of the Class.

Under Rule 23(a)(4), the class representatives and class counsel must fairly and adequately protect the interests of the class. Fed. R. 23(a)(4). The district court is under an obligation "to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *Gen. Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 154 (1982). Thus, the Supreme Court has admonished district courts that they are "to 'stop, look, and listen' before certifying a class in order to adjudicate constitutional claims". *Kremens v. Bartley, supra*, 431 U.S. at 135, 97 S.Ct. at 1718. Citing this, the 8th Circuit has firmly held "the adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case.'" *Bishop v. Comm. on Prof. Ethics and Conduct of Iowa State B. Ass'n*, 686 F.2d 1278, 1288 (8th Cir. 1982), citing *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (quoting C. Wright & A. Miller, *Federal Practice and Procedures* 1765, at 616-17 (1972)).

Recently, the 8th Circuit has reiterated that where "adequacy of class representation is at issue, 'close scrutiny' in the district court is even more important." *Custom Hair Designs by Sandy v. C. Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020), citing *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017), amended, 855 F.3d 913 (8th Cir. 2017). The 8th Circuit has found conflicts of interest in representation warrant disqualification in class actions when there are issues such as relation to class members (*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1147 (8th Cir. 1999)), as well as delays in filing motions (*Rattray v. Woodbury Cnty., IA,* 614 F.3d 831, 835 (8th Cir. 2010). The district court must decide whether Rule 23(a)(4) is satisfied through balancing "the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Rattray v. Woodbury Cnty., IA,* 614 F.3d 831, 835 (8th Cir. 2010).

As noted above, the conduct and capability of Plaintiff's counsel to ethically and fairly adjudicate these issues on behalf of the purposed class has been directly undermined. First, Plaintiff's counsel's misstatements likely run afoul of ethical rules, such as Rule 4.1. As established in the record thus far, Plaintiff's counsel made direct material misstatements to Redline, and then Plaintiff attempts to mischaracterize is own contacts with Redline in order to attempt to substantiate his allegations. (See ¶¶26-29 of Plaintiff's Complaint, Ex. 1; ¶¶15-17 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B, C). The allegations in Plaintiff's Complaint infer that it was Plaintiff who contacted Redline, when in fact it was his counsel under the fake guise of seeking real estate investment funding. (See ¶¶15-16 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B). The record in the immediate matter raises a number of ethical and legal concerns regarding not only the conduct of Plaintiff's attorney prior to the filing of this action, but the factual allegations for which they have presented to this Court. (See ¶¶26-29 of Plaintiff's Complaint, Ex.

1; ¶15 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B, C). These issues suggest counsel for Plaintiff has engaged in outright dishonesty and attempted to shield his true intentions when contacting Redline in violation of Rule 8.4 of the Arkansas Rules of Professional Conduct. Ark. R. Prof. Cond. 8.4.

While this issue appears to be new for the 8th Circuit in a TCPA setting, other federal courts have found that it is inappropriate for an attorney who may have to testify as to relevant facts in a class action to then continue to represent the class in that same action, as it creates a direct conflict of interest. *See Bachman v. Pertschuk*, 437 F. Supp. 973 (D.D.C. 1977) (finding an attorney for the plaintiff class who is employed by a defendant federal agency and who is himself a member of the class has a conflict of interest such that his continued representation of the class will not adequately protect the interests of absent class members); *Reich v. Club Universe,* 178 Cal. Rptr. 473, 476 (Cal. App. 2d Dist. 1981) (Upholding dismissal of a class action where the attorney for the class acknowledged he is not only attorney for the class but also the named class representative, and member, for which the Court granted dismissal). It would clearly then be inappropriate for counsel to continue representing the class, as he has actively interfered and made himself a potential witness in this matter. As such, Defendant respectfully asserts that the Court must find that Plaintiff's counsel is not able to adequately represent the potential class and its members, and that in turn, Plaintiff Bentley cannot fairly and adequately protect the interest of the class.

### F.  Plaintiff Fails to Meet the Requirements Set Forth in Rule 23(b)(3).

Pursuant to Rule 23, a class action may be maintained if each element of Rule 23(a) is satisfied, and at least one subsection of Rule 23(b) is also satisfied. *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403 (8th Cir. 2019). Rule 23(b)(3)'s predominance requirement requires courts to ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important

than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Johannessohn v. Polaris Industries Inc.,* 9 F.4th 981, 984–85 (8th Cir. 2021).

The analysis here clearly presents unique and singular issues to Mr. Bentley, as well as his counsel's representation in this matter thus far, as noted above. (See ¶¶26-29 of Plaintiff's Complaint, Ex. 1; ¶15 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B, C). Not only was Plaintiff included on a list of individuals that had consented to be contacted, evidence suggests that counsel for Plaintiff has outright breached his ethical obligations. (See ¶¶15-17 Cruz Declaration, Ex. 2; Cruz Declaration Exhibit B; See also Ark. S. Ct. R. 4.1 and 8.4).

The limited facts gathered thus far already present issues which cannot be established on a class-wide basis, and thus Plaintiff fails to meet the requirements of Rule 23(b)(3).

**G.    Plaintiff's Complaint Fails to Meet the Requirements of Local Rule 23.1**.

Local Rule 23.1 for the Eastern District of Arkansas addresses issues relating to class actions by stating:

In any case sought to be maintained as a class action:

> (1)   The complaint shall bear the caption "Complaint - Class Action" next to, or under, the style of the case.
>
> (2)   The complaint shall contain a separate paragraph captioned "Class Action Allegations" which shall set forth, inter alia:
>
>> (a)   A reference to the portion or portions of Fed. R. Civ. P. 23 under which it is claimed that the suit is properly maintainable as a class action;   and

        (b)       to: Allegations in support of this claim, including, but not necessarily limited to:

                (i)       the size (in numbers) or approximate size and definition of the alleged and proposed class;

                (ii)       the basis upon which the plaintiff claims (a) to be an adequate representative of the class, or (b) if the class is composed of defendants, the basis upon which plaintiff claims that the named defendant (or defendants) is an adequate representative of the class;

                (iii)       the specific questions of law and fact claimed to be common to any class alleged; and

                (iv)       in actions claimed to be maintainable as class actions under Fed. R. Civ. P. 23(b)(3), allegations in support of the findings required by that subdivision.

E.D. Arkansas, Local R. 23.1.

      Here, Plaintiff's Complaint presents a number of structural defects under Local Rule 23.1. Plaintiff does not bother to explain which allegations satisfy Rule 23.1(b)(2) or (3), instead offering a vague allegation which attempts to cover both at the same time. (See ¶32 of Plaintiff's Complaint, Ex. 1). More importantly, Plaintiff is not an adequate representative of the class. As noted above, Plaintiff is an anomaly and not an appropriate class representative because he presents unique issues of consent and representation. While Plaintiff alleges that he never gave consent, the fact that there is a dispute as to whether or not Plaintiff gave consent makes him an inappropriate class representative. Besides stating broad generalizations, Plaintiff fails to provide any factual allegations regarding the ground upon which his claims are typical of the claims of the proposed class. Finally, in violation of Local Rule 23.1, Plaintiff fails to provide any factual allegations, specifically, that would support the findings required by the subsections of Rule 23(b)(3). As such, the Court should strike Plaintiff's proposed class claim asserted in his Complaint for failure to comply with Local Rule 23.1.

### III. CONCLUSION

This matter presents a number of issues unique not just for a class action, but for an alleged TCPA violation. Plaintiff was included on a list of individuals who consented to be contacted, which creates a substantial difference between himself and any other potential class member. Further, if proven that Plaintiff in fact consented to be contacted, this undoubtedly disqualifies him as a proper class member and further adds to the difference between himself and any other potential class member. Combined with an overly-broad class definition, Plaintiff cannot show commonality, numerosity or typicality with other potential class members. Further, his complaint is structurally defective pursuant to local rule 23.1.

WHEREFORE, Defendant Redline Capital, Inc. seek an order of this Court striking the purported "class allegations" set forth in Plaintiff's Complaint.

<div style="text-align:right">

Respectfully Submitted,

REDLINE CAPITAL, INC.

By: /s/ Thomas P. Yardley, Jr.
One of Redline Capital, Inc.'s Attorneys

</div>

Thomas P. Yardley, Jr. tyardley@buchalter.com  (ARDC 6208239)
 Christine R. Walsh cwalsh@buchalter.com (ARDC 6319177)
Timothy Hameetman thameetman@buchalter.com (ARDC 6335985)
docket@buchalter.com
Buchalter, PC
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 980-5760