# EXHIBIT 1

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

APR 0 2 2025

TAMMY H. DOWNS, CLERK

By:_____

_____ DEP CLERK

JUSTIN BENTLEY, individually and on
behalf of others similarly situated.

        Plaintiff,

v.

REDLINE CAPITAL, INC.

        Defendant.

Case No.: 4:25-cv-319-KGB

**CLASS ACTION COMPLAINT
FOR DAMAGES, STATUTORY
DAMAGES, AND REQUEST FOR
INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

This case assigned to District Judge ___Baker___
and to Magistrate Judge ___Harris___

**Preliminary Statement**

1.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.     Plaintiff Justin Bentley brings this action under the TCPA alleging that Defendant Redline Capital, Inc. ("Redline Capital"), made pre-recorded telemarketing calls for purposes of promoting their goods and services without his prior express written consent.

3.     Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.    A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.    Plaintiff, Justin Bentley, resides in this District.

6.    Defendant Redline Capital, Inc. is a corporation in New Jersey that does business in this District.

### Jurisdiction & Venue

7.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8.    The Court has personal jurisdiction over the Defendant because they engaged in telemarketing conduct into this District.

9.    Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

### TCPA Background

10.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13.     While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

14.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

## Factual Allegations

15.     Redline Capital offers credit and debt relief services.

16.     To sell these services, Redline Capital relies on telemarketing, including prerecorded robocalls.

17.     While such automated technology may save time and money for Redline Capital's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff

18.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

19.     Mr. Bentley' telephone number, (501) 519-XXXX, is registered to a cellular telephone service.

20.     Mr. Bentley received at least two prerecorded calls from the Defendant.

21.     These calls were placed on January 24, 2025 and February 19, 2025 (at least).

22.     The prerecorded messages advertised funding available to businesses and asked consumers to call back if the call recipient was interested.

23.     The calls were clearly pre-recorded because the caller sounds like a robot or computer and the message did not attempt to elicit any interaction with Mr. Bentley.

24.     Indeed, the calls were not personalized and simply asked the call recipient to call back.

25.     Furthermore, the calls requested that the call recipient press a button, which is indicative of a recording.

26.     The February 19, 2025 call asked the call recipient to call back using 770-796-4388.

27.     A call to that number did identify Freddy Loperena.

28.     Mr. Loperena indicated that he worked for the Defendant and proceeded to promote their funding services.

29.     Mr. Loperena then had a funding contract from the Defendant e-mailed over.

30.     The calls invaded Plaintiff's privacy and intruded upon his right to seclusion.

31.     Plaintiff did not consent to receive Defendant's calls prior to the receipt of the unsolicited conduct.

### Class Action Allegations

32.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of class of all other persons or entities similarly situated throughout the United States.

33.     The Class of persons Plaintiff proposes to represent is tentatively defined as:

> Robocall Class:   All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

34.     Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

35.     The Class as defined above is identifiable through phone records and phone number databases.

36.     The potential members of the Class number at least in the hundreds.  Individual joinder of these persons is impracticable.

37.     The Plaintiff Bentley is a member of the Class.

38.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.   Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

b.   Whether Defendant placed calls without obtaining the recipients' prior express consent for the call; and

c.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

39.     The Plaintiff's claims are typical of the claims of class members.

40.     The Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and counsel skilled and experienced in class actions, including TCPA class actions, represents them.

41.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

42.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

43.     The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class' membership described above.

## LEGAL CLAIMS

### First Claim for Relief
### Violation of the TCPA's Automated Call provisions

44.     The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

45.     Defendant's calls were made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

46.     The Defendant violated the TCPA by (a) using a pre-recorded message to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

47.     The Defendant's violations were willful and/or knowing.

48.     The TCPA also authorizes injunctive relief, and the Plaintiff seeks injunctive relief prohibiting Defendant from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance.

### Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.     Injunctive relief prohibiting Defendant from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance;

B.     Because of Defendant's violations of the TCPA, Plaintiff seek for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3);

C.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate class the Court deems appropriate, finding that Plaintiff are proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: April 2, 2025

_____,
Jason Ryburn, ABA 2012-148
Ryburn Law Firm, PLLC
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
[o] (501) 228-8100
[f] (501) 228-7300
jason@ryburnlawfirm.com

Anthony I. Paronich (subject to *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

# EXHIBIT 2

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JUSTIN BENTLEY, individually and
On behalf of other similarly situated,

      Plaintiff,

v.

REDLINE CAPITAL, INC.

      Defendant,

Case No.: 4:25-cv-319-KGB

DEFENDANT'S MOTION TO
STRIKE PLAINTIFF'S CLASS
ALLEGATIONS

<u>**DECLARATION OF NICOLE CRUZ**</u>

1.      I, Nicole Cruz, state pursuant to 28 U.S.C.§1746 that I am over the age of 18 and have personal knowledge of the facts and allegations contained in this Declaration such that if called to testify regarding this matter I can do so competently.

2.      If called to testify in this action, I will testify that all statements set forth in this Declaration are true and correct based on my personal knowledge.

3.      I am the Chief Executive Officer at Redline Capital, Inc. ("Redline").

4.      Redline is a New Jersey-based corporation specializing in capital brokering loans with other financial institutions.

5.      In July 2024, Redline purchased a list of phone numbers from Klover Data, LLC ("Klover"), which Klover represented were phone numbers of individuals who had consented to be contacted for potential business loans. I had previously done business with Klover.

6.      Klover is a firm based in Boca Raton, Florida, and specializes in data aggregation and marketing solutions.

7.      Klover represented that the data Redline was purchasing was current and compliant with the TCPA.

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

8.      Redline pays a premium to Klover for data which is expected to be pre-checked for its authenticity and compliance with the TCPA.

9.      Additionally, Redline pays a premium to Klover to review the data for correctness and accuracy before transmitting it to Redline for contact.

10.     Redline purchased the contact list from Klover pursuant to the assurances that the subject list contained phone numbers of individuals that agreed to be contacted.

11.     The data we purchased was sent to Redline in the form of an excel file which contained contact data for individuals who agreed to be contacted regarding possible loans and capital investments.

12.     When using the information Redline purchased, Redline did not deviate from the list whatsoever, and only contacted recipients who consented to be contacted, nor was Redline advised that any portion of the list had become noncompliant by anyone from Klover.

13.     Plaintiff alleges he received calls on January 24, 2025 and February 19, 2025. *See* ¶21 of Complaint.

14.     On February 21, 2025 Redline received a letter from Plaintiff Justin Bentley demanding an explanation for the calls he received, and stating "I do not believe I have ever provided consent for your company to call or text my cell phone – which is (xxx) xxx-7174". *See* Letter from Justin Bentley, attached hereto as **Exhibit A**.[1]

15.     On February 19, 2025, Redline received a phone call from Jason Ryburn, wherein he misrepresented that he had received a call on his cell phone and further stated that as he was seeking a $100,000.00 loan to acquire real estate property, and inquired if Redline could provide those funds. *See* Transcript of Call from Jason Ryburn, attached hereto as **Exhibit B**.

---

[1] The February 21, 2025 Letter was dated January 8, 2025, some two weeks prior to when Plaintiff alleges he received the calls referenced above in paragraph 13.

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

16.    Mr. Ryburn then provided his email, emailryburn@gmail.com, as a way for Redline to send him information pursuant to his statement that he was seeking a $100,000.00 loan for real estate funding. *See* Exhibit B.

17.    Mr. Ryburn is in fact counsel for Plaintiff in this case. The circumstances suggest that Mr. Ryburn was not inquiring about real estate funding, but was instead attempting to get information from Redline without disclosing Mr. Ryburn's real identity or actual purpose for contacting Redline. *See* Exhibit B.

18.    Between February 21, 2025 and April 4, 2025, Plaintiff Justin Bentley and Nicole Cruz communicated directly via email. *See* Redline Capital Email Chain, attached hereto as **Exhibit C**.

19.    On March 3, 2025, Justin Bentley stated, in part, "However, calling 770-796-4388 did work and was answered by Freddy Loperena on 2/19/25.

20.    Then on March 4, 2025, Justin Bentley stated that he "had someone else call the number left in the voicemail – that is why the email is to Jason", thereby admitting his counsel, Jason Ryburn, had in fact been the person who contacted Redline under the guise of seeking real estate funding. *See* Exhibit C, Pgs. 1-2.

I declare under penalty of perjury pursuant to 28 U.S.C.§1746 and under the laws of the United States of America that the above referenced statements are true and correct with the sole exception of those statements that are qualified to be upon my knowledge or belief.

DATE: May 20, 2025

Signed by:

Nicole Cruz

37F001134F4C403...

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

# EXHIBIT A

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

Redline Capital, Inc.
1 Harmon Meadow Blvd.
Secaucus, New Jersey 07094

Em: nicole@redlinecapitalinc.com

1/8/25

ATTN: Nicole Cruz, CEO and
       Marketing Dep.


On January 24th and February 19th, 2025, you left voicemail messages to my personal cell phone.  It appears that your company may also have placed calls to my cell phone on multiple occasions in the past few months.

I did some research, and it looks like, according to the Telephone Consumer Protection Act, it is illegal to send unsolicited text messages and/or phone calls to a cell phone unless you have consent.

I do not believe I have ever provided consent for your company to call or text my cell phone- which is (501)519-7174. I also do not believe that I have ever done any sort of business with your company.

I am writing to give your company an opportunity to explain these marketing calls and texts.  Please send me any documents you might have to show that you had prior consent of any kind to place marketing calls or texts to my cell phone, as well as any other documents that might support your position that I have no claim under the Telephone Consumer Protection Act against you or your company (if that is your position).

Please forward your response to this letter, along with copies of any relevant documents, to my attention by 3/05/25.


Sincerely,

Justin Bentley

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

# EXHIBIT B

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

**[ATTORNEY-CLIENT PRIVILEGED COMMUNICATION]**

PHONE CONVERSATION BETWEEN (FREDDIE) AND (JASON RYBURN)
RE: FUNDING

(February 19, 2025)

| | |
|---|---|
| Freddie: | Funding, Freddie speaking. |
| Jason: | Hey there, yeah, I just got a message on my cell phone about business funding. |
| Freddie: | Uh-huh. We're you looking for working capital for your business? |
| Jason: | Possibly. I would just like to know the deal, the terms. |
| Freddie: | Of course, so generally we offer revenue-based funding. So basically we look at the cash flow, the type of business in the industry and based on that there could be offers. We do have pre-qualifications; we need the business to at least be doing $20,000 monthly revenue before performing business, are you along those lines? |
| Jason: | Yeah. |
| Freddie: | And how much were you looking for? |
| Jason: | Maybe like $100,000. |
| Freddie: | Okay, and what industry are you in? |
| Jason: | Real estate. |
| Freddie: | Got it, got it. And with the $100,000, what's the goal with the money? |
| Jason: | Just investments and properties. |
| Freddie: | Got it. Okay, so our pre-approval process is pretty simple. All we need is a computer application, last form is business bank statements and February's monthly base. What's the best email I could send our information to? |
| Jason: | I'm sorry, say that again. |
| Freddie: | What's the best email I could send, like our information, to? |
| Jason: | It's the word emailryburn@gmail.com – so its emailryburn@gmail.com |
| Freddie: | At gmail? Got it. And this is your cell phone number? Your best cell number? |
| Jason: | This is my cell phone, yeah. |

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

Freddie:    Got it. So I'll send you an email in about five minutes. It will have all our information on our website. We have tons of reviews online and can look that up, too. Once that email is sent, I'll give you a quick text and let you know that I sent the email. If you have any questions, call our section back any time, okay?

Jason:    Sure, thanks!

Freddie:    Alright, talk to you soon. Bye-bye!

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

# EXHIBIT C

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

 Outlook

---

## Re: Redline Capital

**From** Nicole Cruz <Nicole@RedlineCapitalInc.com>

**Date** Fri 04/04/25 11:38 AM

**To** Justin Bentley <bentley.justin@gmail.com>

Hi Justin, I received your lawsuit. I'm willing to give you $750 to settle without any admission of liability.

---

**From:** Justin Bentley <bentley.justin@gmail.com>
**Sent:** Thursday, March 6, 2025 1:01 PM
**To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
**Subject:** Re: Redline Capital

Okay, thank you for the response.  Please let me know when you find out who made these calls.

On Tue, Mar 4, 2025 at 6:48 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:
> Thank you for clarifying. As mentioned, we have no record of an application or direct outreach under your name or number, and we don't do any cold calls. We also don't manage external vendor lists, but I'll review the screenshots you provided to see if we can identify a vendor.

---

> **From:** Justin Bentley <bentley.justin@gmail.com>
> **Sent:** Tuesday, March 4, 2025 2:26 PM
> **To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
> **Subject:** Re: Redline Capital
>
> Thanks again. No, I did not apply for any funding- I seem to have received these calls out of the blue. I had someone else call the number left in the voicemail- that is why the email is to Jason.
> But, as you can see, he called the number given in the prerecorded message and Mr. Loperena answered. I assume the callers were hired to generate leads for Redline.
>
> If this is some sort of vendor or third party making these calls- should I contact them directly? Do you have their contact information? I am concerned as to how they got my personal cell phone number and why I am on their calling list.
>
> Thank you.
>
> On Mon, Mar 3, 2025 at 7:19 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:
>> Hi Justin, thanks we reviewed the details. Based on everything you provided we do not see your information in any of our records, the app and email seemed to have been sent to another person named Jason. Is it possible that you applied through a third-party source for funding which may have led to a transfer?

---

>> **From:** Justin Bentley <bentley.justin@gmail.com>
>> **Sent:** Monday, March 3, 2025 5:07 PM
>> **To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
>> **Subject:** Re: Redline Capital

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

Nicole,

Thank you for your response. As far as I can tell, I was called on 1/24/25 and 2/19/25. Both callers left voicemails using a prerecorded voice and advertising "flash funding."

The 1/24/25 caller called from 510-338-9094 and left a call back number of 754-294-8357. (see attached transcript)

The 2/19/25 caller called from 248-621-5337 and left a call back number of 770-796-4388. (see attached transcript)

Calling the 754 number does not seem to work- the owner or system hangs up after a few rings.

However, calling 770-796-4388 did work and was answered by Freddy Loperena on 2/19/25.  (see attached call recording)

Freddy revealed that he worked for your company and sent an email with a link to a funding contract that it appears you authored from a redlinecapitalinc email address. (see attached screenshot, contract, and contract metadata)

Given all of this, it appears that calls are being made on your behalf. The phone number given on those prerecorded messages lead to your employee, which he confirmed by sending an email with your logo and information.

Please let me know that you received this email.

On Fri, Feb 21, 2025 at 4:10 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:

> Justin,
>
> We have reviewed our records and do not find any indication that our company has contacted you or that your phone number appears in our system. If you have documentation showing that our company contacted you without consent, please forward it so we may investigate this matter.
>
> Thanks.
>
> ---
>
> **From:** Justin Bentley <bentley.justin@gmail.com>
> **Sent:** Friday, February 21, 2025 10:51 AM
> **To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
> **Subject:** Redline Capital
>
> Nicole, please find the attached letter and respond at your earliest convenience.  Thanks.
>
> ---
> Justin M. Bentley
> 501.519.7174 cell

--
---
Justin M. Bentley
501.519.7174 cell

--

Docusign Envelope ID: 06E8B7E9-8654-4A9F-82C4-F20CE442E101

---
Justin M. Bentley
501.519.7174 cell


--
---
Justin M. Bentley
501.519.7174 cell

# EXHIBIT A

Redline Capital, Inc.
1 Harmon Meadow Blvd.
Secaucus, New Jersey 07094

Em: nicole@redlinecapitalinc.com

1/8/25

ATTN: Nicole Cruz, CEO and
        Marketing Dep.


On January 24th and February 19th, 2025, you left voicemail messages to my personal cell phone. It appears that your company may also have placed calls to my cell phone on multiple occasions in the past few months.

I did some research, and it looks like, according to the Telephone Consumer Protection Act, it is illegal to send unsolicited text messages and/or phone calls to a cell phone unless you have consent.

I do not believe I have ever provided consent for your company to call or text my cell phone- which is (501)519-7174. I also do not believe that I have ever done any sort of business with your company.

I am writing to give your company an opportunity to explain these marketing calls and texts. Please send me any documents you might have to show that you had prior consent of any kind to place marketing calls or texts to my cell phone, as well as any other documents that might support your position that I have no claim under the Telephone Consumer Protection Act against you or your company (if that is your position).

Please forward your response to this letter, along with copies of any relevant documents, to my attention by 3/05/25.


Sincerely,

Justin Bentley

# EXHIBIT B

**[ATTORNEY-CLIENT PRIVILEGED COMMUNICATION]**

PHONE CONVERSATION BETWEEN (FREDDIE) AND (JASON RYBURN)
RE: FUNDING

(February 19, 2025)

| | |
|---|---|
| Freddie: | Funding, Freddie speaking. |
| Jason: | Hey there, yeah, I just got a message on my cell phone about business funding. |
| Freddie: | Uh-huh. We're you looking for working capital for your business? |
| Jason: | Possibly. I would just like to know the deal, the terms. |
| Freddie: | Of course, so generally we offer revenue-based funding. So basically we look at the cash flow, the type of business in the industry and based on that there could be offers. We do have pre-qualifications; we need the business to at least be doing $20,000 monthly revenue before performing business, are you along those lines? |
| Jason: | Yeah. |
| Freddie: | And how much were you looking for? |
| Jason: | Maybe like $100,000. |
| Freddie: | Okay, and what industry are you in? |
| Jason: | Real estate. |
| Freddie: | Got it, got it. And with the $100,000, what's the goal with the money? |
| Jason: | Just investments and properties. |
| Freddie: | Got it. Okay, so our pre-approval process is pretty simple. All we need is a computer application, last form is business bank statements and February's monthly base. What's the best email I could send our information to? |
| Jason: | I'm sorry, say that again. |
| Freddie: | What's the best email I could send, like our information, to? |
| Jason: | It's the word emailryburn@gmail.com – so its emailryburn@gmail.com |
| Freddie: | At gmail? Got it. And this is your cell phone number? Your best cell number? |
| Jason: | This is my cell phone, yeah. |

Freddie:     Got it. So I'll send you an email in about five minutes. It will have all our information on our website. We have tons of reviews online and can look that up, too. Once that email is sent, I'll give you a quick text and let you know that I sent the email. If you have any questions, call our section back any time, okay?

Jason:     Sure, thanks!

Freddie:     Alright, talk to you soon. Bye-bye!

# EXHIBIT C

 Outlook

---

Re: Redline Capital

---

**From** Nicole Cruz <Nicole@RedlineCapitalInc.com>
**Date** Fri 04/04/25 11:38 AM
**To** Justin Bentley <bentley.justin@gmail.com>

Hi Justin, I received your lawsuit. I'm willing to give you $750 to settle without any admission of liability.

---

**From:** Justin Bentley <bentley.justin@gmail.com>
**Sent:** Thursday, March 6, 2025 1:01 PM
**To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
**Subject:** Re: Redline Capital

Okay, thank you for the response.  Please let me know when you find out who made these calls.

On Tue, Mar 4, 2025 at 6:48 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:
> Thank you for clarifying. As mentioned, we have no record of an application or direct outreach under your name
> or number, and we don't do any cold calls. We also don't manage external vendor lists, but I'll review the
> screenshots you provided to see if we can identify a vendor.

---

**From:** Justin Bentley <bentley.justin@gmail.com>
**Sent:** Tuesday, March 4, 2025 2:26 PM
**To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
**Subject:** Re: Redline Capital

Thanks again. No, I did not apply for any funding- I seem to have received these calls out of the blue. I had
someone else call the number left in the voicemail- that is why the email is to Jason.
But, as you can see, he called the number given in the prerecorded message and Mr. Loperena answered. I
assume the callers were hired to generate leads for Redline.

If this is some sort of vendor or third party making these calls- should I contact them directly? Do you have their
contact information? I am concerned as to how they got my personal cell phone number and why I am on their
calling list.

Thank you.

On Mon, Mar 3, 2025 at 7:19 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:
> Hi Justin, thanks we reviewed the details. Based on everything you provided we do not see your information in
> any of our records, the app and email seemed to have been sent to another person named Jason. Is it possible
> that you applied through a third-party source for funding which may have led to a transfer?

---

**From:** Justin Bentley <bentley.justin@gmail.com>
**Sent:** Monday, March 3, 2025 5:07 PM
**To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
**Subject:** Re: Redline Capital

Nicole,

Thank you for your response. As far as I can tell, I was called on 1/24/25 and 2/19/25. Both callers left voicemails using a prerecorded voice and advertising "flash funding."

The 1/24/25 caller called from 510-338-9094 and left a call back number of 754-294-8357. (see attached transcript)

The 2/19/25 caller called from 248-621-5337 and left a call back number of 770-796-4388. (see attached transcript)

Calling the 754 number does not seem to work- the owner or system hangs up after a few rings.

However, calling 770-796-4388 did work and was answered by Freddy Loperena on 2/19/25.  (see attached call recording)

Freddy revealed that he worked for your company and sent an email with a link to a funding contract that it appears you authored from a redlinecapitalinc email address. (see attached screenshot, contract, and contract metadata)

Given all of this, it appears that calls are being made on your behalf. The phone number given on those prerecorded messages lead to your employee, which he confirmed by sending an email with your logo and information.

Please let me know that you received this email.

On Fri, Feb 21, 2025 at 4:10 PM Nicole Cruz <Nicole@redlinecapitalinc.com> wrote:

> Justin,
>
> We have reviewed our records and do not find any indication that our company has contacted you or that your phone number appears in our system. If you have documentation showing that our company contacted you without consent, please forward it so we may investigate this matter.
>
> Thanks.
>
> ---
>
> **From:** Justin Bentley <bentley.justin@gmail.com>
> **Sent:** Friday, February 21, 2025 10:51 AM
> **To:** Nicole Cruz <Nicole@RedlineCapitalInc.com>
> **Subject:** Redline Capital
>
> Nicole, please find the attached letter and respond at your earliest convenience.  Thanks.
>
> ---
> Justin M. Bentley
> 501.519.7174 cell

--
---
Justin M. Bentley
501.519.7174 cell

--

---
Justin M. Bentley
501.519.7174 cell


--
---
Justin M. Bentley
501.519.7174 cell