**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

JUSTIN BENTLEY, individually and on
behalf of other similarly situated.

              Plaintiff,

v.

REDLINE CAPITAL, INC.

            Defendant.

Case No.: 4:25-cv-319-KGB

<u>**Plaintiff's Response in Opposition To Defendant's Motion To Strike Class Allegations**</u>

## I.    INTRODUCTION

Defendant Redline Capital, Inc. (Redline or Defendant)'s motion to strike class claims must be denied because the Plaintiff's proposed class definition is by no means overly broad. Nor is simply pleading the possibility of the *affirmative defense* of consent at the pleadings stage sufficient to warrant *striking* class claims here; to the contrary, courts routinely *certify* classes, even in the presence of some consent evidence, because discovery reveals that consent evidence is often susceptible to classwide proof. Multiple courts across the country have rejected identical arguments to here that similar classes should be stricken because they are allegedly uncertifiable.

Nor did one of Plaintiff's multiple attorneys conduct any type of misconduct, let alone the egregious sort of misconduct necessary to warrant the extreme remedy of striking Plaintiff's counsel on adequacy grounds at the pleadings stage as Defendant seeks here.

Defendant's motion should therefore be denied in its entirety.

## II.    FACTUAL BACKGROUND

As pertinent to this motion, this case began on January 24, 2025, when the Plaintiff, Justin Bentley, received the first of two calls to his 501- area code Arkansas cellular telephone number. The Plaintiff received a subsequent call on February 19. Both calls were prerecorded calls that were left on the Plaintiff's voicemail, were not personalized, and did not give the legal name of the caller, the Defendant. The calls were placed to Mr. Bentley without his consent. Both calls provided the Plaintiff with a telephone number to call back on. Thereafter, Mr. Bentley retained Attorney Jason Ryburn to investigate and file the instant class action suit against Redline. Because Mr. Ryburn, like Mr. Bentley, could not identify the caller, Mr. Ryburn called both of the numbers listed on the voicemails Plaintiff received back. When Mr. Ryburn called one of the numbers, 770-796-4388, Mr. Ryburn was connected to Freddy Loperena, an employee of the Defendant. However, even during the call Mr. Ryburn placed, Mr. Loperena did not identify himself by his last name or his company name, instead saying that he was with "Funding." Indeed, the Defendant hiding its identity in its robocalls is nothing new, as other consumers have complained about the same experience:



*See e.g.* https://www.trustpilot.com/review/streamlinefunding.online (Last Visited June 26, 2025).

As a result, and solely to identify the proper defendant that was calling his client illegally, Mr. Ryburn provided his email address so that he could receive an email to identify the Defendant. Mr. Ryburn received that email, which revealed Mr. Loperena's last name and the fact that he was an employee with the Defendant, Redline Capital.

To their knowledge, neither Mr. Ryburn nor Plaintiff received further calls as a result of Mr. Ryburn's investigation. And, having identified the caller who was calling him illegally, the Plaintiff filed the instant lawsuit on April 2, 2025. In it, the Plaintiff asserts a single class action claim for violations of the TCPA's robocall provisions, and tentatively defines the class as:

> <u>Robocall Class:</u> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more nonemergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Defendant has filed a motion to strike these class claims against it, alleging that various of Rule 23's and the local rule's requirements have not been met on what broadly amount to two bases: first, that the Defendant obtained the Plaintiff and other class members' consent to place the subject calls, and, second, that Mr. Ryburn's investigation to identify the caller behind the illegal calls renders Mr. Ryburn and Plaintiff inadequate representatives of the above class they seek to represent. This response follows.

### III.    LEGAL STANDARD

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV.

P. 12(f), (f)(2). However, the 12(f) device is used rarely and is particularly disfavored, applying, by its very definition, to "any redundant, immaterial, impertinent, or scandalous matter." "Striking a party's pleading, however, is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Particularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy "because it is seldom, if ever, possible to resolve class representation question from the pleadings alone." *Courtright v. O'Reilly Auto. Stores, Inc.*, No. 14-00334-CV-W-GAF, 2014 WL 12623695, at *2 (W.D. Mo. July 7, 2014); *accord Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (similar quotation). The Eighth Circuit has recognized that motions to strike are often sought "simply as a dilatory or harassing tactic." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.) and explaining that motions to strike are only appropriate when a portion of the complaint plainly lacks a legal basis, not because of a question as to whether or not the class can be certified).

It is therefore little surprise that courts in the Eighth Circuit, including this one, rarely strike class allegations at the pleadings stage; striking pleadings is the exception, not the rule, including in TCPA cases, just as alleged here. *See, e.g.*, *McCall L. Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124, 1132 (E.D. Ark. 2018) (holding that issues of consent at the pleadings stage did not defeat predominance, numerosity, or adequacy); *Eagle v. GVG Cap., LLC*, No. 22-CV-00638-SRB, 2023 WL 1424537, at *2 (W.D. Mo. Jan. 31, 2023) (holding motion to strike in TCPA case was premature); *St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*, No. 4:12-CV-02224, 2013 WL 1076540, at *7 (E.D. Mo. Mar. 13, 2013) (same); *Katz v. CHW Grp., Inc.*, No. 5:22-CV-5198, 2023 WL 6445798, at *7 (W.D. Ark. Sept. 29, 2023) (holding

TCPA class was not failsafe); *Warren v. Millennia Hous. Mgmt., Ltd.*, No. 4:23-CV-00977 KGB, 2024 WL 4372159, at *12 (E.D. Ark. Sept. 30, 2024) (citing *Donelson* and noting that, despite apparent issues of cohesiveness, it was inclined to adjudicate "the issue upon a fuller record," particularly when there was no arbitration agreement, as in *Donelson*).

## IV.    ARGUMENT

A.    *The Plaintiff's class claims must not be struck because the Plaintiff does not plead an overly broad class.*

Defendant first contends that the proposed class is overly broad because it includes "all persons within the United States" as class members and is thus overbroad, including because it may include class members who have consented, rendering the class overly broad and failsafe. This Court can quickly dispatch with those arguments.

The possibility of the as-yet unpled and unevidenced potential defense of consent does not render the class a failsafe class. As an initial matter, the Defendant gets the analysis wrong in interpreting what constitutes a failsafe class. The *inclusion* of language that excludes from the class any person that consented to being contacted renders the class failsafe, not the other way around, as Defendant claims. Here, the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible failsafe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included the language Defendant seems to want Plaintiff to include in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones

> using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015). Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did Defendant make pre-recorded calls?
- Did it make those calls to cell phones or other protected lines?
- Were the calls necessitated by any emergency?
- Does Defendant claim to have obtained consent to call other class members' numbers in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id.* at *8-9 (finding that the plaintiff's proposed Class were not failsafe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Even worse for the Defendant's argument here, Defendant has not adduced any evidence of consent in support of its motion that the putative class is allegedly overly broad because of the alleged existence of consent. The mere possibility of consent will not preclude class certification, let alone justify striking such allegations at the pleadings stage. *See e.g. Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). In another TCPA matter, the Sixth Circuit

Court of Appeals addressed this issue directly in *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.,* 843

F.3d 1119, 1125-26 (6th Cir. 2016):

> We have recognized repeatedly that "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544 (quoting *Beattie*, 511 F.3d at 564). Here, Bridging Communities and Gamble presented evidence suggesting a class-wide absence of consent—evidence that B2B failed to contact anyone on the list it purchased from InfoUSA to verify consent prior to faxing them advertisements. In response, Top Flite merely alleged that class members *might* have given consent in some other way…
>
> We are unwilling to allow such "speculation and surmise to tip the decisional scales in a class certification ruling[,]" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000), particularly under the circumstances present here. Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance. *See Young*, 693 F.3d at 544; *Beattie*, 511 F.3d at 564; *see also In re HCA Holdings, Inc.*, No. 14-0511, 2015 U.S. App. LEXIS 3015, [*1126] 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015).
>
> Even where defendants point to some evidence [**13] that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *see also Avio, Inc.*, 311 F.R.D. at 437-46. As the First Circuit has recognized, moreover, if evidence later shows that a "defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether." *Smilow*, 323 F.3d at 39-40 (citations omitted).
>
> We hold that the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3). *See Young*, 693 F.3d at 544; *Beattie*, 511 F.3d at 564. Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases "wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." Robert G. Bone & David S. Evans, *Class Certification and the Substantive Merits*, 51 Duke L.J. 1251, 1269 (2002). In light of the foregoing, particularly the class-wide evidence Bridging Communities and Gamble presented showing an absence of consent, we hold that speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of

predominance under Rule 23(b)(3). The district court abused its discretion in holding otherwise in this case.

Courts are virtually unanimous in their recognition that where a defendant has offered no evidence that consumers consented to receive telemarketing calls, individual issues relating to consent do not predominate over common questions at TCPA class certification. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 95 (3d Cir. 2011) ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (mere possibility of consent does not preclude class certification); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 570 (W.D. Wash. 2012) (rejecting "individualized issues" argument based on TCPA consent) (citations omitted); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (TCPA defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals may have perchance consented to receiving the fax.") (citations omitted); *Kaye v. Amicus Mediation & Arbitration Grp., Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014) ("the mere possibility that some class members have claims subject to separate defenses is not a reason to deny certification").

The entire issue of consent is a red herring that is premature and is a factual issue more appropriately suited to class certification. In fact, when the Defendant has not met its burden of demonstrating consent applicable to the class, let alone at the pleadings stage, a class is properly *certified*, not stricken. *See, e.g*, *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022).

To this end, the defendant's own (hearsay) assertions that Redline was told that the list of phone numbers it purchased was supposedly "compliant with the TCPA" is wholly insufficient to demonstrate that the class is somehow failsafe because of consent.

*First*, even if this Court were to credit this inadmissible hearsay statement, Ms. Cruz's declaration is notable for what it does *not* say: it does not mention *any* factual basis as to why it contends Redline had "consent" at all other than the additional hearsay statement that "Klover

represented" that the phone numbers were those of individuals "who had consented to be

contacted for potential business loans." Representations of consent by a third party do not

constitute consent. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 872 (N.D. Ill. 2024)

(denying motion for summary judgment on consent issue when defendant proffered a hearsay

spreadsheet of individuals who consented). In essence, Defendant asks this Court to hold as a

matter of law that a TCPA class in which there is even the *possibility* of consent is not

ascertainable. As the Fourth Circuit[1] recently explained, that is not the law:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer v. Dish Network, LLC*, 925 F.3d at 656 (2019) (noting that "the TCPA clearly supports

class-wide resolution"). Indeed, the Eighth Circuit actually *reversed* the denial of a motion for

class certification in a TCPA case, reasoning that common legal and factual issues predominated

over individualized ones, and further holding that predominance and adequacy were also met.

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("The

questions of law . . . predominate, as do the questions of fact."). Indeed, courts around the

country have *certified* numerous class actions based on violations of the TCPA, including where

discovery developed that there were uniform legal issues surrounding proffered consent

evidence. *See, e.g.*, *Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024

WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of

---

[1] Defendant claims that a decision denying class certification from the District of Maryland that predates *Krakauer*, *infra*, "*Ginwright v. Exeter Fin. Corp.*," 280 F. Supp. 3d 674 (D. Md. 2017), is the "4th Circuit." Defendant also claims that the Southern District of Ohio denying class certification is the "6th Circuit in *Barrett v. ADT Corp.*," No. 2:15-CV-1348, 2016 WL 865672, at *1 (S.D. Ohio Mar. 7, 2016). Defendant is mistaken.

consent); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019),

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012). And identifying

class members in a TCPA case is simply a matter of routine expert work, as other Courts in this

Circuit have found when *certifying* similar TCPA cases. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*,

No. CV164469SDWLDW, 2020 WL 525898, at *11 (D.N.J. Jan. 31, 2020).

      This Court's sister has already held that a *nearly identical* class definition that, like the

one here, did not exclude those who had consented and was *not a failsafe* class, in the same

TCPA context as the case at bar (and not the perplexing mortgage context proffered by the

Defendant in *Mayo*). To that end, the Court also chided counsel for advancing the same

argument as here:

> Mr. Katz contends that CHW's fail-safe argument is based on CHW's re-characterization
> of Mr. Katz's class definitions rather than on the actual language of the class definitions.
> The Court agrees with Mr. Katz, and would add that those re-characterizations seem to be
> procrustean attempts at fitting the class definitions into favorable (for CHW) caselaw
> rather than applying the caselaw to the class definitions that Mr. Katz has proposed.
> Specifically, every single case that CHW cites in which TCPA class allegations were
> stricken on fail-safe grounds did so because the classes included only individuals who did
> not consent to the receipt of phone calls.

*Katz*, 2023 WL 6445798, at *7. At bottom, it is clear that the class Plaintiff proposed class is not

overly broad.

B.    *The Plaintiff's class meets other Rule 23 requirements and should not be struck.*

      Defendant argues that the Plaintiff's proposed class lacks commonality, numerosity, and

typicality at the pleadings stage. All three arguments fail.

    <u>*Commonality.*</u> "Class certification is normal in litigation under [the TCPA], because the

main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*,

728 F.3d 682, 684 (7th Cir. 2013). The commonality requirement dictates that the case have

"questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The bar for

demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case will satisfy this requirement.

As an initial matter, courts in the Eighth Circuit routinely hold that TCPA cases satisfy the commonality requirement, even when there are disputed issues of putative consent. *Even if* consent were to become an issue in this case, as this Court's sister has noted, evaluation of whether consent issues are susceptible to a common answer is appropriately evaluated at class certification, not the pleadings stage. "At this early stage in litigation, prior to any class discovery or a motion for class certification, the Court cannot determine whether individualized matters will predominate over common issues." *Katz*, 2023 WL 6445798, at *6. The Eighth Circuit reached the same conclusion in *Sandusky*, reasoning that the "common contention" that satisfied Rule 23(a)(2)'s commonality requirement was whether "class members received an unsolicited fax advertisement." 821 F.3d at 998. So too here, where the "common contention" is whether class members received an unsolicited prerecorded voice call. *See id.*

And as this Court further noted in *McCall*, yet another TCPA case denying a motion to strike class allegations at the pleadings stage, and citing *Sandusky*, the issue of whether or not the messages class members received was "unsolicited" or not was irrelevant to determining commonality: "construing McCall's complaint liberally, that McCall has alleged facts sufficient to survive the present motion to strike class allegations." *McCall*, 335 F. Supp. 3d at 1132. Because Mr. McCall's complaint, construed "liberally," pled that he received an "unsolicited"

communication and that such communications were sent to "hundreds, if not thousands" of people, he facially stated a claim that satisfied Rule 23's commonality requirement. *Id.* at 1133. Just as there, here, the Plaintiff has unequivocally pled in his complaint that he received unsolicited prerecorded calls without consent and that there are many other individuals who received such calls, just like him, and as Defendant implicitly concedes.

Although consent *might* become an issue in this class action, such contentions of consent most often do not require an individualized inquiry in any event. Even if they did, the putative consent evidence cannot be evaluated at the pleadings stage because it hasn't even been produced yet to determine whether individualized inquiry is necessary. And even if the evidence were produced, the facts and evidentiary basis of consent, together with its legal effectiveness, are all issues capable of classwide resolution, since consent under the TCPA must meet certain requirements. For starters, if the legal requirements for consent are not satisfied, for example by using legally insufficient language on a website used to obtain consent, every class member would not have provided legally sufficient consent and consent becomes a nonissue. *Aley*, 2024 WL 4007345, at *3 (certifying class on common legal issues of consent). Similarly, even factual circumstances surrounding the obtained consent are subject to classwide adjudication, but discovery is required to determine whether or not there exist individualized consent issues which may defeat class certification. *See, e.g., Jamison v. First Credit Servs.*, No. 12 C 4415, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013) (denying certification of TCPA class on individualized consent issues after discovery).

Nevertheless, because all the telephone calls here originated from the same place, the success and legal sufficiency of any affirmative defense of consent will necessarily involve a common question with common answers. TCPA cases are routinely certified as common, even

when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases). In fact, when the Defendant has not met its burden of demonstrating consent applicable to the class, let alone at the pleadings stage, a class is properly *certified*, not stricken. *See, e.g*, *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022). This is so because consent is an *affirmative defense* for which the Defendant bears the burden of proof, therefore making it a particularly inappropriate yardstick for measuring the broadness of a proposed class. *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017).

 Indeed, as described above, the jury will use the Defendant's own excel spreadsheet to craft a uniform, objective answer to the common questions in this litigation, as outlined above. The Western District of Washington explained the appropriateness of this analysis thusly:

> What if [plaintiff] learns in discovery that [defendant] has never attempted to obtain the consent of any putative class member? . . . What if [plaintiff] learns in discovery that [defendant's] corporate policy is to ignore people . . . who explicitly inform them that she does not consent to their phone . . . The court could go on, but there is no need. It is entirely plausible that [plaintiff] will uncover evidence that will permit her, on a classwide basis, to prove that no one (or virtually no one) consented . . . It is entirely plausible that [plaintiff], after discovery, will be able to demonstrate not only common questions, but common questions that predominate over individualized inquiries. Perhaps [defendant] is correct that consent or other issues will ultimately require an individualized inquiry, but there is no way to make that determination now.
> [Defendant's] motion illustrates why courts typically decide class certification after discovery, not on the pleadings.
>
> *Meyer v. Receivables Performance Mgmt., LLC*, No. C12-2013RAJ, 2013 WL 1914392,

at *2 (W.D. Wash. May 8, 2013).

 Nor does *Ung* mandate a different result. There, the District of Minnesota, *on a motion for class certification*, and not a motion to strike, as here, denied class certification when there

13

was evidence that some class members legitimately and validly provided their consent to a debt collector to call them, and no argument was made that the consent was legally deficient, or that there existed any other uniform, classwide issues with the purported consent evidence that was adduced at discovery. *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017). *Ung* does not stand for the proposition, as defendant claims, that any class definition not addressing the issue of consent is uncertifiable, let alone at the pleadings stage based on the Defendant's say-so. Rather, all it stands for is that consent evidence *may* prove an individualized issue at the class certification stage after discovery in some cases, such as when there is no way to distinguish between those class members that legitimately provided their consent and those that did not. But this court cannot make that determination without evaluating the evidence itself. Simply put, the Plaintiff has a right to evaluate the evidence, including the "list of individuals that had [purportedly] consented to being contacted," and show uniform reasons why the issues of consent can be adjudicated on a classwide basis. And, as the Plaintiff will address in the subsequent section addressing the propriety of class counsel's conduct, any subsequent investigation undertaken does not immunize the fact that the calls were placed without consent, and were therefore illegal, as an initial matter. *Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 WL 5289337, at *6 (N.D. Ill. Aug. 17, 2023) ("All Moore did was answer the telephone when the telemarketer called him. He did not entrap anyone. He did not create the violation.").

Moreover, the Defendant's motion takes for granted that it will be able to prove its *affirmative defense* of consent on a classwide basis at some later stage in the litigation, but *nowhere* does Defendant provide any admissible, non-hearsay evidence tending to show that it had consent to contact the Plaintiff at all in its motion. The best it can muster is some manufactured doubt as to why the Plaintiff stated that he *believes* he never consented, which

were in the context of Rule 408 communications made to ascertain what occurred in this litigation. But that statement simply restates the self-evident fact that the Plaintiff can't be certain of anything. In addition to being wholly inadmissible and used for an improper purpose under Rule 408, it doesn't even concede that the Plaintiff consented; in any event it is the Defendant's affirmative burden to prove consent, not the Plaintiff's to disprove consent as an initial matter. In any event, the little evidence uncovered at the pleadings stage demonstrates that consent issues, let alone individualized ones, are exceedingly unlikely. To the extent consent becomes an issue here, the Court should evaluate it on a full factual record at class certification to determine if common evidence can still address those issues. Commonality is thus satisfied.

*Numerosity.* On the issue of numerosity, Defendant speaks out of both sides of its mouth. In its previous section, Defendant challenged the Plaintiff's class definition for being overly *broad*, that is, including too many people in its sweep. In its subsequent section, Defendant states that the class definition is too *narrow* and thus not sufficiently numerous. Defendant cannot have it both ways. The Plaintiff's pleadings clearly show that the proposed class is sufficiently numerous.

In support of its motion, Defendant has submitted a Declaration of Nicole Cruz. That declaration states that "Redline," a New Jersey company, "purchased a list of phone numbers" from another company, "Klover Data, LLC," which she explains "is a firm based in Boca Raton, Florida, and specializes in data aggregation and marketing solutions." (Cruz Dec. ¶ 4–6). Plaintiff's Arkansas telephone number was apparently included on that list. Given that the Arkansas Plaintiff here was contacted by a New Jersey company who obtained his number from a Florida "data aggregat[or]," the Plaintiff's class including all persons in the United States is not overly broad and easily satisfies the numerosity requirement. By definition, an "aggregator" is

one who forms "by the collection of units or particles into a body, mass, or amount." Webster's New Collegiate Dictionary, Eleventh Ed. (2003). Notably, on this point of geographic diversity between the Plaintiff, lead generator, and aggregator, "[t]he finding of geographic dispersion generally supports a finding of numerosity because such a finding supports the proposition that joinder is impracticable." *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 523 (N.D. Iowa), amended in part, 216 F.R.D. 453 (N.D. Iowa 2003). And the Eighth Circuit has favorably cited to certified classes across the country containing as few as a few dozen class members. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982). That being the case here, that the Plaintiff was simply one of a long list of individuals from across the country harmed in a similar way, thus satisfying numerosity.

Actions by each class member \ after the fact do not defeat numerosity.. Defendant commits a critical error, conflating the number of class members asserting a common *claim*, founded in same legal theory with a similar course of conduct and common questions, with the uniformity of the evidence and factual circumstances surrounding the claim and the *proofs* used to narrow and address issues in the resultant class list. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024). It is well-established in the class action context generally and the TCPA class action context specifically that factual differences as to proof of class members' claims do not preclude class certification on numerosity and related grounds, so long as those factual differences are either immaterial to the claims' elements or otherwise susceptible to categories of generalized proof. *E.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (emphasis added):

> Kolinek's claim that Walgreens violated the TCPA when it placed a prerecorded prescription reminder call to his cellular phone satisfies Rule 23(a)'s typicality requirement because the class consists of all persons who received such calls. *The number of times other class members received prescription reminder calls is immaterial*

> *to the question whether those claims arise from the same course of conduct and share a common legal theory.*

*See also Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1142 (W.D. Mo. 2020). "[T]he TCPA does not contemplate a content-based restriction on actionable calls—it prohibits *all* calls sending prerecorded messages to certain individuals without consent, *regardless of the content of the messages*." *Starling v. KeyCity Cap., LLC*, No. 3:21-CV-818-S, 2022 WL 198403, at *5 (N.D. Tex. Jan. 21, 2022) (emphasis added). Thus, that different class members may have done different things upon receiving the messages: some investigated them, others deleted them, etc., does not serve to break up a numerous class into thousands of subclasses of one. The Plaintiff, like all class members in his proposed class definition, all hold the same legal claim, having received calls which violate the TCPA. Because the law is broken at the moment the calls are placed, and because the claims do not turn on what any class member said or did after that, all class members join in the same legal claim, and their joinder is impracticable.

*Typicality*. The Plaintiff is also not atypical. As has already been addressed, Defendant challenges typicality on much the same grounds as the numerosity of the class. "[T]ypicality [is] satisfied if class representative's injuries arose from 'same events or course of conduct' and his claims are 'based on the same legal theory.'" *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024). Much of the commonality analysis applies to typicality because both elements "tend to merge." *Wal-Mart*, 564 U.S. at 350 n.5. Typicality does *not* require that the Plaintiff's claims be identical to other class members. *Kolinek*, 311 F.R.D. at 491.  It is clear that the Plaintiff here has the same interests as other class members; protecting his privacy. His claims arise from the same events as other class members in that he received highly-illegal non-consensual prerecorded calls, and on the same legal theory; that those calls violated the TCPA. The Plaintiff has therefore demonstrated how his claims are typical of other class members. This

identical conduct gives rise to the Class's claims. Every class member has the same claims, so by Plaintiff proving his claims, he will prove the class claims. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (certifying a TCPA case and finding that "[t]he 'typicality' requirement is met as the legal theory for each class member is based on the same facts and legal theory as [plaintiff]").

Indeed, courts routinely certify as typical TCPA cases where, like here, the same circumstances caused the calls at issue. *See, e.g., Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015). Courts also do not see consent issues as destroying typicality, particularly when, as here, the purported customer denies having consented and where there are uniform issues with the offered consent evidence. *Aley*, 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024), *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012). Here, the Defendant has admitted that it placed the subject calling campaign as a result of "a list it purchased" from a *singular* data aggregator, "in the form of an excel file," that was not "deviate[d] from [] whatsoever," and thus a single source. (Cruz Dec. ¶ 4–6, 11-12); *Compare Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (holding that there were individualized issues when consent evidence was obtained from multiple sources) *with Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (holding that typicality was satisfied when recipients' contact information was drawn from a single third-party database).

It is simply untrue that any as-yet unexplored and undeveloped purportedly "unique issues" render the Plaintiff atypical at the pleadings stage. As addressed above, the Plaintiff's statement that he does not "believe" that he provided consent in Rule 408 correspondence was

simply a representation that, by virtue of receiving a highly illegal unsolicited prerecorded robocall, he was unsure of what basis (such as any alleged consent) that the Defendant had to contact his number. Certainly, as Defendant is forced to acknowledge, the Plaintiff's complaint in this regard makes it unequivocally clear that the Plaintiff did not consent. (Compl. ¶ 31). Thus, if anything, and at the pleadings stage, the Plaintiff is typical of all other class members, who all have identical claims for precisely the same reason: the Plaintiff, like them, did not consent.

And, as has also been explained above, neither consent, nor the allegedly "unethical" investigation of Plaintiff's counsel, are sufficient individualized or unique defenses applicable only to the Plaintiff so as to defeat certification at the pleadings stage here. The calls were illegal from the moment they were placed, and that allegation does not constitute a defense merely because of something that was said or done after the fact. *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch."). Simply put, what happened after an illegal call is no more an individualized defense to the class claims here than a robber who donates the stolen money to charity after committing said robbery. The Plaintiff has clearly pled typicality at the pleadings stage.

C.    *Plaintiff and his counsel are unquestionably adequate.*

Defendant seems to imagine the only adequate class representatives are people who are ignorant of their rights under the TCPA and who cannot invest time and effort into investigating meritorious claims rendered more difficult to investigate by the Defendant's own wrongdoing. That's not the law. The adequacy of representation factor requires that the class representative and his chosen counsel, that is, the "representative parties," must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy of representation requirement

focuses on whether the class representatives have common interests with the members of the class, and whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982).

Although Defendant cites several cases when courts denied motions for class certification on adequacy grounds, Defendant fails to cite any case where the court granted a Rule 12(f) motion to strike class allegations on this ground. As an initial matter, in the absence of relevant authority, the Court should decline to take the extraordinary step of holding class counsel inadequate at the pleadings stage here. What Mr. Ryburn did was not only ethical, but a practice *actively endorsed* by several other courts, as Defendant is now attempting to take advantage of its own wrongdoing in lying about who they were on the calls and chiding Plaintiff's counsel for (accurately) uncovering that Defendant was behind the highly illegal calls.

That Plaintiff's counsel here called the Defendant to ascertain who was calling his client illegally does not render Plaintiff's counsel inadequate. Indeed, to this end, the Defendant hides its own misconduct in ignoring the fact that it refused to identify itself, in direct contravention of the TCPA. 47 C.F.R. § 64.1200(d)(4). As the District of Utah reasoned in *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021)

> If a telemarketing text message lacked any identifying information (and thus violated Section 64.1200(d)(4)), the recipient would be unable to figure out how to opt out of receiving future messages, and all the while the mysterious telemarketer could continue bombarding the consumer with spam texts with no fear of legal reprisal.

And as the FCC has counseled, "[A]dequate identification information is vital so that consumers can determine the purpose of the call, possibly make a do-not-call request, and monitor compliance with the TCPA rules." *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 (Jul. 25, 2003).

As the attached Declaration of Jason Ryburn makes clear, Plaintiff's counsel was "unable to identify the party or parties who left at least two unwanted voicemails" on his client's cell phone. Indeed, in direct contravention of 47 C.F.R. § 64.1200(d)(4), those calls used the illegal fictitious aliases of "Flash Funding" and "Rapid Funding." They were not otherwise personalized in any way. As such, Mr. Ryburn called the two callback numbers left on his client's voicemail. As the Defendant's own transcript, ECF No. 11-1, p. 17-18, reveals, at *no point during that call* did the Defendant or "Freddie" even disclose that they were from Defendant Redline Capital. Indeed, "Freddie" simply answered the call as saying that he was with "funding." As such, Attorney Ryburn needed to further investigate and receive an email to affirmatively identify the caller who was calling his client illegally.

Defendant claims that this conduct "likely" runs afoul of "ethical rules," including Arkansas Rule 4.1. That rule states, in relevant part, that "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person." ARK. R. PROF. COND. 4.1. The key word in that Rule is the term "material." As Black's Law Dictionary explains, a "material" fact is one that has "some logical connection with the consequential facts" or is "relevant." *Material*, BLACK'S LAW DICTIONARY (10th ed. 2014). Nothing about Plaintiff's counsel calling Defendant to ascertain its identity has any bearing on any of the facts that the Plaintiff or the class will use to prove their TCPA claims, nor is it relevant to the success or failure of the Plaintiff's or the class's claims.

This case is proceeding based on allegations that the Plaintiff received unsolicited pre-recorded voicemails that violated the TCPA. What the calls were about, or what investigation was carried out to uncover who was behind them, is not *material* to the critical fact in this case: that the Plaintiff received multiple pre-recorded calls which violated the TCPA. This is because

the TCPA prohibits the *placing* of illegal calls; it does not couch a violation on the call's receipt, or anything that was said or done on the calls. Nor can a TCPA violation be somehow immunized by the provision of retroactive consent or consent obtained during a call. 47 U.S.C. § 227(b)(1)(A) (prohibiting "mak[ing]" calls, and not qualifying a violation on what is said during an answered call); *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *15 (D. Md. June 6, 2024) (granting motion for class certification and rejecting defendant's claim that it obtained putative consent during an illegal call).

As numerous courts have held, nothing that is said or done on a call changes the fact that a TCPA violation has occurred or immunizes the caller from liability. *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch."). The fact that [a Plaintiff] 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019). Nor is the recipient of an illegal call (or anyone else, for that matter), under any obligation to tell them that what they are doing is illegal. *Powell v. W. Asset Mgmt.*, 773 F. Supp. 2d 761, 764 (N.D. Ill. 2011) (citing cases for the proposition that "[C]ourts that have considered whether a plaintiff has a duty to mitigate damages under Section 227 of the TCPA have found there is no such duty.").

This is not to mention that several courts have actually *endorsed* the very practices engaged in by counsel for Plaintiff here in investigating those callers who call their client illegally to uncover their identities, including in *denying* motions similar to Defendant's on

22

similar grounds. For example, in *Stemke v. Marc Jones Construction, LLC*, the plaintiff's

"attorneys confirmed that Sunpro placed the subject calls" by calling the numbers back, and so

the court there denied defendant's motion to strike. No. 5:21-CV-274-30PRL, 2021 WL

4340424, at *3 (M.D. Fla. Sept. 23, 2021). Similarly, in *Bryant v. Byron Udell & Assocs. Inc.*,

No. 123CV00414AJTLRV, 2023 WL 5180351, at *4 (E.D. Va. Aug. 11, 2023), the court cited

favorably to *Stemke* and faulted the plaintiff for not having her attorneys "call back the number

that made the telemarketing solicitation and confirm it belonged to the defendant." Other Courts

have cited favorably to *Stemke*'s facts and implicitly endorsed the practice of attorneys

confirming that a listed defendant placed the calls by calling the number back. *See, e.g.*,

*Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024);

*Katz v. Caliber Home Loans, Inc.*, No. 3:23-CV-0145-S, 2023 WL 5311488, at *3 (N.D. Tex.

Aug. 17, 2023). Notably, the permissibility of this investigative conduct operates both ways.

*Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at

*1 (D. Ariz. Jan. 12, 2023) (noting that plaintiff spoke with in-house counsel for defendant, who

confirmed that defendant placed the calls).

 At bottom, investigating individuals who already broke the law by calling the Plaintiff

illegally is not acting unethically, nor does it make the attorney investigating a client's claims a

material witness in the matter. *See, e.g., Apple Corps Ltd. v. Int'l Collectors Soc.*, 15 F. Supp. 2d

456, 475 (D.N.J. 1998) (finding that New Jersey's rule prohibiting deceit by attorneys does not

apply to misrepresentations made solely to gather evidence); *Gidatex, S.r.L. v. Campaniello

Imports, Ltd.*, 82 F. Supp. 2d 119, 126 (S.D.N.Y. 1999) (concluding no ethical violation occurred

where investigators posed as interior designers and merely observed routine business conduct);

*Impossible Foods Inc. v. Motif Foodworks, Inc.*, 675 F. Supp. 3d 448, 454 (D. Del. 2023)

(holding that misrepresentations as to identity or purpose do not violate Rule 4.1 when made by an investigator posing as a customer in the ordinary course of business). If anything, conducting a pre-filing investigation demonstrates that the attorney is acting ethically by investigating the client's claims, their factual basis, and the proper entities to be sued as defendants.

Although ethical conduct is relevant to adequacy, courts have consistently held that only *serious* ethical misconduct, particularly conduct that prejudices the class or undermines the integrity of the proceedings, warrants denial of class certification. Here, Mr. Ryburn's conduct was the opposite: all he did was conduct an investigation to uncover support for the Plaintiff's meritorious claims. This renders the defendant's citations distinguishable. In *Custom Hair*, the Eight Circuit *affirmed* the district court's decision to *certify the class* and incorporated adequacy determination, and reasoned that denial of certification would be inappropriate unless there were intraclass conflicts. *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 605 (8th Cir. 2020). There, the Eighth Circuit expressly *rejected* the defendant's argument that "identifying and not including class members," like excluding from the class those members who had consented here, created an intraclass conflict, since those members were not even in the class and thus "not litigated." *Id.* And in *Target Corp.*, the Eighth Circuit found recitation of Rule 23(a)(4) insufficient without explanation or response to defendants' claim of an intraclass conflict to be insufficient at the class certification stage. *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir.), *amended*, 855 F.3d 913 (8th Cir. 2017).

Nor are the other authorities cited by the Defendant, both addressed at class certification, at all anything like the case at bar, because both addressed sufficiently serious misconduct. In *Petrovic v. Amoco Oil Co.*, the court disqualified one of the original class counsel because of a palpable conflict of interest: "two of the class representatives were close relatives (the husband

and a sister-in-law) of a partner in the firm in question." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999). That is plainly not the case here; Plaintiff and Mr. Ryburn are not related. And here, Mr. Ryburn has not exercised the same lack of diligence in pursuing the class claims at issue here as did counsel in *Rattray*; to the contrary, Mr. Ryburn's actions allowed him to conduct a detailed investigation of his client's claims prior to filing the instant suit. *Rattray v. Woodbury Cnty., IA*, 614 F.3d 831, 834 (8th Cir. 2010) (noting that class counsel was inadequate because counsel was inexperienced in class litigation and lacked the demonstrated zeal to represent a class).

Further, the Defendant cites *Reich v. Club Universe*, 178 Cal. Rptr. 473, 475 (Ct. App. 1981), to suggest that disqualification of class counsel warrants dismissal under the advocate-witness rule. However, that case is nothing like this one. There, the attorney sought to serve *simultaneously* as class representative and class counsel and was *also* a key witness to the events at issue, triggering disqualification under the advocate-witness rule. By contrast, Mr. Ryburn is neither a class member nor a *material* witness, and thus no disqualifying conflict exists. There will be nothing for Mr. Ryburn to testify about at trial because nothing that he said or did in the course of his investigation has any bearing on whether the Defendant violated the TCPA by placing the subject calls as an initial matter. Federal Rule of Evidence 602 requires a witness to have *personal knowledge* of the matters being testified about. Mr. Ryburn has no personal knowledge of the facts and circumstances surrounding the conduct alleged in the complaint: the prerecorded calls Plaintiff received, and therefore will be unable to testify to them. Identifying a tortfeasor simply does not make the attorney a witness in the underlying tort claim. Accordingly, *Reich* does not support striking the class allegations in this case, either.

Particularly because Mr. Ryburn's conduct is of the same sort actively *encouraged* and given *imprimatur* by district courts throughout the country and does not bear on any material fact in this case, Mr. Ryburn violated no ethical rule. But even *if* there was some arguable violation of Rule 4.1, that does not render Mr. Ryburn inadequate. For example, in *J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 217 (S.D. Iowa 2019) the court declined to disqualify class counsel, despite allegations of misrepresentations in violation of the Iowa Rules of Professional Conduct. There, the court explained that a minor ethical violation, even if assumed true, did not amount to *per se* inadequacy under Rule 23(a)(4) and 23(g) because it neither prejudiced the class nor created a conflict undermining counsel's ability to fairly and adequately represent the class. *Id.* As the Court noted in that case, as here, any alleged misrepresentation was isolated and not relevant to the class claims:

> Given the requirements of Rule 23(g), the ethical violation in question must somehow impact counsel's adequacy to represent the class. Clearly, "misconduct that prejudices the class or creates a direct conflict between counsel and the class" would warrant such a finding. However, DRI's alleged misconduct does not give rise to such concerns. It is not clear how an isolated misrepresentation regarding what appears to be a logistical issue, made to a lawyer not involved in this matter, is relevant to this case.

Alleged ethical violations rarely warrant denial of class certification. Various circuit courts have observed that minor attorney misconduct does not require a finding that the attorney is inadequate to represent the class. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 499 (7th Cir. 2013) ("A 'slight' or 'harmless' breach of ethics will not impugn the adequacy of class counsel."); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323–24 (11th Cir. 2008). By contrast, in *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160–61 (S.D.N.Y. 2010), the court denied class certification where counsel was found to have been complicit in knowingly allowing false deposition and interrogatory responses. Certainly, there is

no allegation that Mr. Ryburn or Plaintiff have engaged in any such conduct. Both Plaintiff and

his counsel are prepared to and will adequately represent the class and its members.

D.    *The proposed class satisfies predominance for the same reasons.*

Finally, Defendant claims that the Plaintiff's class does not satisfy predominance because

supposedly "individualized" issues of the ilk describe above preclude certification. However, as

explained above, the Defendant's say-so that it has consent or allegations that Plaintiff's counsel

has allegedly violated ethical rules are insufficient at the pleadings stage to demonstrate that

individualized issues will necessarily predominate. "The mere mention of a defense is not

enough to defeat the predominance requirement of Rule 23(b)(3) . . . allowing such speculation

to dictate the outcome of a class-certification decision would afford litigants in future cases wide

latitude to inject frivolous issues to bolster or undermine a  finding of predominance". *Bridging*

*Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016).

Because consent is an *affirmative defense* for which the Defendant bears the burden of

proof, it is a particularly inappropriate yardstick for measuring predominance. *See Blow v.*

*Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). Attempts to refute a claim by a defense are

properly addressed in a motion for summary judgment, not a motion to dismiss. *Mattson v. New*

*Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2018 WL 6735088, at *3 (D. Or. Nov. 6, 2018)

(denying similar motion to strike in TCPA case). And, as the Court noted in *Mattson*, "It follows

that the documents presented in support of New Penn's affirmative defense do not compel this

court to strike the class allegations at this stage of the litigation." *Id.* The mere allusion to

potential consent and established business relationship defenses are not enough to find Plaintiff's

classes uncertifiable at this or any other stage. *See, e.g.*, *True Health Chiropractic, Inc. v.*

*McKesson Corp.*, 896 F.3d 923, 932-33 (holding predominance was satisfied where "the record

27

shows . . . little or no variation" in the forms used to obtain consent); *Mohamed v. Off Lease Only*, 320 F.R.D. 301, 316 (S.D. Fla. 2017). The same reasoning applies with equal force to the unwarranted allegation that Plaintiff's counsel has breached his ethical duties. Predominance is thus satisfied.

E.    *Plaintiff has complied with Local Rule 23.1*

Plaintiff has plainly complied with Local Rule 23.1's requirements. His complaint bears the appropriate caption. (ECF 1, p. 1). It contains a separate heading, not just a single paragraph, as required, addressing the "Class Action Allegations." (ECF 1, p. 5). The subsequent paragraphs all address the sub-requirements. The Plaintiff asserts a Rule 23(b)(2) or 23(b)(3) class. *Id.* He pleads the size of the class as "at least in the hundreds." *Id.* The Plaintiff is adequate "because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and counsel skilled and experienced in class actions, including TCPA class actions, represents them." *Id.* at p. 6. Plaintiff alleges multiple common legal and factual questions capable of resolution by reference to objective criteria. *Id.* Finally, he addresses predominance and other Rule 23(b)(3) requirements. *Id.* Defendant seems to couch the Plaintiff's supposed "structural defects" under the Local Rules as challenges to the pleadings themselves, which have already been addressed. This Court has already refused to strike similar class allegations at the pleadings stage. There is nothing about the pleading, in and of itself, that appears to run afoul of the actual text of Local Rule 23.1 other than the Defendant's "re-characterizations," which seem to be "procrustean attempts at fitting the class definitions into favorable (for [Redline]) caselaw" that would constitute inadequate pleading under the Local Rules. *Katz*, 2023 WL 6445798, at *7. To the extent that the Plaintiff's pleading is allegedly inadequate under the local rules because it is inadequate as a legal matter, the Court can address

those underling claims. To the extent that those somehow implicate inadequate pleading under the Local Rules, this Court should freely give leave to amend.

## V.    CONCLUSION

This Court must deny Defendant's motion to strike in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend the class definition to correct the deficiencies or properly preserve such issues for class certification.


Dated:  June 25, 2025

        */s/ Jason M. Ryburn  *,
        Jason Ryburn
        Ryburn Law Firm
        650 S. Shackleford Rd., Ste. 231
        Little Rock, AR 72211
        [o] (501) 228-8100
        [f] (501) 228-7300
        jason@ryburnlawfirm.com

        */s/ Anthony I. Paronich*,
        Anthony I. Paronich
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043.
        [o] (617) 485-0018
        [f] (508) 318-8100
        anthony@paronichlaw.com

        *Counsel for Plaintiff*