IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JUSTIN BENTLEY, individually and on
behalf of others similarly situated**                    **PLAINTIFF**

**v.**                    **Case No. 4:25-cv-00319-KGB**

**REDLINE CAPITAL INC.**                    **DEFENDANT**

## ORDER

Before the Court is defendant Redline Capital Inc.'s ("Redline") motion to strike plaintiff's class allegations (Dkt. No. 10).  Redline argues that plaintiff Justin Bentley's complaint has multiple issues which should preclude Bentley from litigating this matter as a class action (*Id.*).  Bentley responded to the motion (Dkt. No. 16), and Redline replied (Dkt. No. 19).  For the following reasons, the Court denies the motion (Dkt. No. 10).

### I.    Factual Background

Bentley alleges that on January 24, 2025, and February 19, 2025, Bentley received at least two pre-recorded calls which advertised funding available to businesses and asked consumers to call back if the call recipient was interested (Dkt. No. 1, ¶¶ 19–21).  Bentley alleges that these calls were pre-recorded because they sounded like a robot (*Id.*, ¶ 23).  Bentley alleges that the calls came from different numbers and left different numbers for Bentley to call back (Dkt. Nos. 1, ¶ 26; 16, at 2).

Bentley's counsel in this case, Jason Ryburn, called the numbers provided (Dkt. Nos. 1, ¶ 27; 11, at 3; 16, at 2).  Ryburn then spoke on the phone with an individual named Freddy Loprena, though Loprena identified himself only as Freddy from Funding (Dkt. Nos. 1, ¶ 27; 11, at 3, 34).  During the call, Redline alleges that Ryburn represented that Ryburn had received a call about funding, was looking for $100,000.00, and worked in real estate (Dkt. No. 11, at 34).  Ryburn does

not deny these allegations (Dkt. No. 16, at 2–3, 20–28).  Loprena then sent a form to Ryburn's email (Dkt. Nos. 11, at 34; 16, at 3).  Ryburn used the information in the email to identify Redline as the party allegedly responsible for the calls Bentley received (Dkt. Nos. 1, ¶ 28; 16, at 3).

Following these events, Bentley sent a letter to Nicole Cruz, Redline's CEO, requesting an explanation for the calls to his phone (Dkt. Nos. 11, at 32; 16, at 18).  In that letter, Bentley stated, "I do not believe I have ever provided consent for your company to call or text my cell phone." (Dkt. Nos. 11, at 32; 16, at 18).

Bentley filed the present action alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), and pled class action allegations (Dkt. No. 1, at 5).  Bentley's proposed class is:

> All persons within the United States to whom:  (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(*Id.*, ¶ 33).

Excluded from Bentley's proposed class are counsel, Redline, any entities in which Redline has a controlling interest, Redline's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family (*Id.*, ¶ 34).  Bentley asserts that the potential members of the class are "at least in the hundreds" (*Id.*, ¶ 36).

## II.    Summary Of Arguments

Redline argues that Bentley's class allegations should be stricken because it is apparent from the pleadings that the class cannot be certified (Dkt. No. 11, at 4).  Specifically, Redline argues that:  (1) Bentley's class is overbroad; (2) Bentley does not satisfy the requirements for commonality, predominance, typicality, or numerosity; (3) Bentley's counsel, Ryburn, cannot adequately represent the interests of the class; and (4) Bentley's complaint fails to satisfy Local

Rule 23.1 of the United States District Court for the Eastern and Western Districts ("Local Rule 23.1") (Dkt. No. 11).

First, Redline argues that Bentley's proposed class is overbroad because Bentley failed to exclude from the class any person that consented to be contacted, making the class a "fail-safe" class (*Id.,* at 6).

Second, Redline argues that Bentley does not satisfy the commonality requirement with his proposed class because Bentley may have consented to the call and because Ryburn violated ethical rules by making misrepresentations in its contact with Redline (*Id.*, at 8–9). Redline argues that Bentley does not satisfy the predominance requirement, typicality requirement, or numerosity requirement for the same reasons (*Id.*, at 10–15). Additionally, in regard to numerosity, Redline argues that issues of "consent, amount of calls, [and] interaction with the caller (if any), each present possibly different violations or damages under the TCPA," and therefore Bentley is an atypical member of his purported class and has distinct issues and defenses which preclude Bentley from being a sufficient representative for his proposed class (*Id.*, at 10–15).

Third, Redline argues that Bentley's counsel, Ryburn, cannot adequately represent the interests of the class since Ryburn acted in a questionably ethical way and may have to testify as to relevant facts in this class action, which creates a conflict of interest (*Id.*, at 13–14).

Finally, Redline argues that Bentley failed to comply with Local Rule 23.1 because Bentley did not explain which allegations satisfy Rule 23.1(b)(2) or (b)(3) and did not adequately plead facts that support Bentley being a class representative (*Id.*, at 16)

In response, Bentley first argues that his proposed class is not overbroad because including language about consent, rather than excluding it, would cause the class to be a "fail-safe" class (*Id.*, at 5–6).

Second, Bentley argues that he has satisfied the commonality, predominance, typicality, and numerosity requirements because: (1) Bentley and his proposed class have common questions with common answers that predominate over individual questions, regardless of whether Bentley's consent is an issue (*Id.*, at 11, 27); (2) even if Redline proved Bentley's consent, common questions of whether consent was validly obtained would apply to everyone in the class (*Id.*, at 12); (3) Redline's argument regarding whether customers listened or deleted messages is immaterial as to whether such persons are members of the same class (*Id.*, at 17); (4) Redline's argument regarding Ryburn's actions after Bentley received the call are not relevant to whether Redline violated the TCPA (*Id.*, at 19); and (5) even if consent or Ryburn's actions become an issue, it is premature to strike class allegations at this stage in the proceedings (*Id.*, at 12).

Further, in regard to consent, Bentley argues that Redline provides no factual basis as to why it believes Redline had consent other than "the additional hearsay statement that 'Klover represented' that the phone numbers were those of individuals 'who had consented to be contacted for potential business loans'" (*Id.*, at 8–9).

Third, Bentley argues that both Bentley and Ryburn are able to represent adequately the interests of the class in this case because Ryburn's conduct only occurred as a result of Redline obscuring its identity (*Id.*, at 20–21). Further, Bentley argues, what happened in those calls is not material to whether Redline violated the TCPA, and even if it was, Ryburn's actions did not amount to serious ethical misconduct and therefore will not prejudice the class or undermine the integrity of the proceedings (*Id.*, at 24). Bentley also asserts that Ryburn is neither a class member nor a material witness, so no conflict of interest exits (*Id.*, at 25).

Finally, Bentley argues that he has complied with Local Rule 23.1 and Redline's argument is simply repetitive of the points already made (*Id.*, at 28).

In reply, Redline argues that: (1) Ryburn's actions inject a "whole series of specific issues unique" to Bentley which would require extensive discovery into Bentley's specific actions (Dkt. No. 19, at 4); (2) Bentley's consent and Ryburn's actions make Bentley an atypical member of his proposed class because they would subject him to a unique defense (*Id.*, at 9–11); and (3) Ryburn's actions were unethical, will prejudice the class, and make Ryburn a material witness (*Id.*, at 11–12).[1]

### III.    Legal Framework

The Court may "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" under Federal Rule of Civil Procedure 12(f). *Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). Under Rule 12(f), "Judges enjoy liberal discretion to strike pleadings." *Id.* Striking a pleading is a "drastic" remedy which is "an extreme and disfavored measure." *Id.* The Court "may grant motions to strike class-action allegations prior to the filing of a motion for class-action certification" when it is "apparent from the pleadings that the class cannot be certified." *Id.* "Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (internal citations omitted); *see Knowles v. Standard Fire Ins. Co.*, Case No. 4:11-cv-04044, 2013 WL 6497097, at 3 (W.D. Ark. Dec. 11, 2013) ("[T]he Court

---

[1] The Court notes that Redline's reply misrepresents certain case law by claiming that "the 8th Circuit has firmly held" or "the 8th Circuit has noted" certain language (Dkt. No. 19, at 3, 5, 6). In reality, this language comes directly from district court cases rather than the Eighth Circuit. Further, the Court notes that the fruit of the poisonous tree doctrine, which Redline argues makes Ryburn's actions problematic for Bentley's TCPA claim, is an exclusionary rule used in criminal contexts and is thus not applicable here (*Id.*, at 6).

recognizes that Plaintiff has not had the opportunity to take any meaningful discovery on class certification issues, and the Court is therefore hesitant to issue an order foreclosing the possibility of any class-wide remedy at this stage of litigation."). Nevertheless, striking a pleading may "sometimes [be] appropriate . . . such as when a portion of the complaint lacks a legal basis." *Donelson*, 999 F.3d at 1091. To be certified as a class, Bentley "must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Cody v. City of St. Louis*, 103 F.4th 523, 528-29 (8th Cir. 2024). Federal Rule of Civil Procedure 23(a) requires "showing that the class meets requirements of 'numerosity, commonality, typicality, and fair and adequate representation.'" *Id.* (quoting *Ahmad v. City of St. Louis*, 995 F.3d 635, 643 (8th Cir. 2021)). Certification under Federal Rule of Civil Procedure 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Federal Rule of Civil Procedure 23(b)(3) requires "the court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## IV. Analysis

### A. Class Description

Redline argues that failing to exclude individuals who consented to receiving calls makes Bentley's proposed class a "fail-safe" class, while Bentley responds that *adding* such an exclusion would make the proposed class a fail-safe class (Dkt. Nos. 11, at 6; 16, at 5–6). A fail-safe class is one in which the class is defined to preclude membership unless a putative member would prevail on the merits. *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). That sort of class

"is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.* (internal citations omitted).  Fail-safe classes exist when the class definition incorporates elements of liability. *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (finding a class to be fail-safe when the definition incorporated two contested elements of liability, resulting in a class made up of only those harmed by defendant's alleged legal violation).

Here, Bentley's proposed class is:

> All persons within the United States to whom:  (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(Dkt. No. 1, ¶ 33).

Bentley's exclusion of individuals who consented to being called does not make his class a fail-safe class since Bentley's proposed class does not preclude membership unless the member would prevail on the merits.  *See Katz v. CHW Grp., Inc.*, Case No. 5:22-cv-5198, 2023 WL 6445798, at 7 (W.D. Ark. Sept. 29, 2023) (citing eight cases in which TCPA class allegations were stricken on fail-safe grounds because the class included only members who did not consent to the calls).  Thus, Redline's argument—that Bentley's proposed class fails because it is a fail-safe class—is without merit, and the Court declines to strike Bentley's class allegations on this ground.

### B.    Commonality, Predominance, Typicality, And Numerosity

Redline's arguments regarding commonality, predominance, typicality, and numerosity revolve around whether Bentley's alleged consent or Ryburn's interactions with Redline make Bentley an improper representative for his proposed class.

To satisfy commonality under Federal Rule of Civil Procedure 23(a)(2), Bentley's claim "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky Wellness Ctr., Ltd. Liab. Co. v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011)). The predominance requirement of Federal Rule of Civil Procedure 23(b)(3) similarly requires that "questions of law or fact common to class members must predominate over any questions affecting only individual members." *Id.*; Fed. R. Civ. P. 23(b)(3). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Id.* (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.*

Here, Bentley's primary claim is that he, along with others on the list Redline purchased, received an unsolicited call from Redline, which was a violation of the TCPA. Redline argues that Bentley's alleged consent and the behavior of Ryburn result in novel questions and defenses which preclude Bentley from meeting the commonality requirement.

While some courts have found consent to preclude commonality, the defendants in those cases presented sufficient evidence of consent to justify not certifying a class. *See Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 541 (D. Minn. 2017) (finding consent to preclude commonality when the defendant provided evidence that the company confirmed consent with some recipients and a woman "expressly advised the company that it could call her"); *Newhart v. Quicken Loans,* Case No. 9:15-cv-81250, 2016 WL 7118998, (S.D. Fla. Oct. 12, 2016) (finding consent to preclude commonality when individuals provided consent orally, by email, and through

a website).  The only evidence Redline has provided regarding consent are Bentley's statement that "he did not believe" he had consented and a representation that Klover Data LLC ("Klover") told Redline that everyone on the list had given consent (Dkt. Nos. 11, at 10, 28).  *See Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (granting class certification when a defendant purchased a list from a third party, despite the defendant claiming that issues of consent prevented commonality); *Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 327 (5th Cir. 2008) (citing favorably to a district court which granted class-wide lack of consent when the defendant purchased class members' fax numbers from a third party and the database did not indicated the individuals' consent).

At this stage, the Court finds this evidence of consent insufficient to strike Bentley's class allegations on commonality grounds.  *Sandusky*, 821 F.3d at 998 (citing *Holtzman v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013)) ("Class certification is normal in litigation under [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients.")); *see McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124, 1133 (E.D. Ark. 2018) (declining to strike plaintiff's class allegations in a TCPA case since the plaintiff alleged that class members received an unsolicited fax, despite the defendant arguing that the plaintiff did not suffer a common injury to the class).

In regard to Ryburn's actions, Redline argues that Ryburn's actions "raise potential ethical and legal issues surrounding how Redline was contacted" and thus Bentley does not meet the commonality requirement (Dkt. No. 11, at 9).  However, it is unclear from Redline's briefing how these vague ethical and legal issues affect the applicable issues or defenses of Bentley's primary claim that members of the class received an unsolicited call from Redline, in violation of the TCPA.  Ryburn's actions may very well create a factual difference between Bentley and other

class members after the alleged TCPA violation occurred, but it is unclear how such differences affect the alleged violation and prevent Bentley from establishing that "the same evidence will suffice for each member to make a prima facie showing." *Sandusky*, 821 F.3d at 998.

While Bentley's consent and Ryburn's actions may be relevant to this case, the Court is also unconvinced that such matters are clear enough to justify striking Bentley's class allegations on predominance grounds. The Court is not convinced that striking Bentley's class allegations on typicality grounds is appropriate for the same reasons. *See Dukes*, 564 U.S. at 349 n.5 (the "commonality and typicality requirements of Rule 23(a) tend to merge"); *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (minor "factual variations" do not make the named plaintiff atypical).

Redline raises no additional arguments in regard to numerosity, other than arguing that "issues of consent, amount of calls, [and] interaction with the caller (if any), each present possibly different violations or damages under the TCPA." (Dkt. No. 11, at 11). Under the TCPA, it is "unlawful for any person within the United States to make a call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Accordingly, whether or not Redline had interaction with the caller is not relevant to whether Redline violated the TCPA.

While committing multiple violations of the TCPA against a single individual may be relevant in this matter, the mere fact that Redline may have called some class members more or less than Bentley does not make Bentley distinguishable from his proposed class in a way that defeats numerosity. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (finding that a plaintiff satisfied all Rule 23(a) requirements when the number of calls class members received varied).

To the extent Redline argues that Bentley's statement that the "potential members of the class number in the hundreds" is insufficient to prove numerosity, Redline itself has admitted that it purchased a list of phone numbers but has not offered any evidence to refute Bentley's assertion that the list contains hundreds of potential class members (Dkt. No. 11, at 5, 28).

Therefore, the Court declines to strike Bentley's motion based on commonality, predominance, typicality, or numerosity requirements.

### C.    Adequate Representation

Federal Rule of Civil Procedure 23(a)(4) requires Bentley to show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). When certifying a class where "adequacy of class representation is at issue, 'close scrutiny' in the district court is even more important given the need to protect the due process rights of absent class members."  *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020) (quoting *in re Target Corp Customer Data Sec. Breach Litig.,* 847 F.3d 608, 612 (8th Cir. 2017).

Redline argues that Ryburn is not able to represent adequately the potential class and its members because Ryburn misrepresented his identity when he called Redline (Dkt. No. 11, at 13–14).  Because of this misrepresentation, Redline argues, Ryburn has made himself a witness and made his ethical violation an issue in this matter, which may harm absent class members' claims (Dkt. No. 19, at 12).

Redline alleges that Ryburn called Redline on February 19, 2025—after Bentley allegedly received a phone call that violated the TCPA and did not identify the caller—and misrepresented

11

who he was (Dkt. No. 11, at 3). During the call, the representative did not identify which company he worked for, and Ryburn asked for a document, which was then emailed to Ryburn's personal email (*Id.*, at 3, 34). Bentley alleges that the purpose of this interaction was to identify the source of the phone calls left on his cell phone (Dkt. Nos. 1, ¶¶ 27–29; 16, at 20). As previously discussed, violations of the TCPA occur when the unlawful call is made, regardless of what contact is made afterward. 47 U.S.C. § 227(b)(1)(A)(iii). Redline does not explain, and the Court will not speculate, how Ryburn's actions—which occurred after the alleged violation—make him a key witness in this case. Redline states that these actions "likely run afoul of ethical rules," but Redline fails to explain how any such action is relevant to whether Redline violated the TCPA or would prejudice class members in such a way that Ryburn and Bentley cannot "fairly and adequately represent the members of the class." (Dkt. No. 11, at 12). Fed. R. Civ. P. 23(a)(4); *cf. Stemke v. Marc Jones Constr., LLC*, Case No. 5:21-cv-274-30-PRL, 2021 WL 4340424, at *3 (M.D. Fla. Sep. 23, 2021) (finding a motion to strike class allegations premature even when plaintiff's lawyer called numbers left on a client's voicemail). Further, unlike the cases cited by Redline which found that counsel was inadequate when counsel was a member of the class or the class representative, Ryburn is specifically excluded from Bentley's proposed class (Dkt. Nos. 1, ¶ 33; 11, at 14).

Therefore, at this point, the Court declines to strike Bentley's class allegations based on adequate representation grounds.

### D.     Local Rule 23.1

Local Rule 23.1 imposes various requirements on parties seeking class certification. Redline argues that Bentley did not explain which allegations satisfy Federal Rule of Civil

Procedure 23.1(b)(3), as required by Local Rule 23.1(1)(b)(iv), and that certain "structural defects" run afoul of Local Rule 23.1.

Matters pertinent to a class action under Federal Rule of Civil Procedure 23.1(b)(3) are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)

Bentley's complaint states: (1) "the likelihood that individual members of the class will prosecute sperate actions is remote due to the time and expense necessary to prosecute the case" (Dkt. No 1, ¶ 42); (2) Bentley is "not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class's membership described above" (*Id.*, ¶ 43); (3) "common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy" (*Id.*, ¶ 41); and (4) Ryburn is "skilled and experienced in class actions, including TCPA class actions" (*Id.*, ¶ 40). Therefore, Bentley addressed the requirements of Local Rule 23.1 and Redline's argument is without merit.

Redline's other arguments about "structural defects" running afoul of Local Rule 23.1 are simply repetitions of arguments already made. The Court declines to strike Bentley's class allegations for violations of Local Rule 23.1.

## V.    Conclusion

Given Bentley's allegations and the procedural posture of this case, the Court is not satisfied that it is appropriate to deny class certification at this time.  Instead, the Court will allow Bentley to proceed with discovery to develop the factual issues.  Accordingly, the Court denies Redline's motion to strike plaintiff's class allegations (Dkt. No. 10).

It is so ordered this 31st day of March, 2026.

_____
Kristine G. Baker
Chief United States District Judge